# United States Court of Appeals
## For the First Circuit

No. 11-2399

UNITED STATES OF AMERICA,

Appellee,

v.

STEVEN CHAMBERS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Selya and Thompson,

Circuit Judges.

Raymond E. Gillespie on brief for appellant.
Randall E. Kromm, Assistant United States Attorney, and Carmen M. Ortiz, United States Attorney, on brief for appellee.

March 13, 2013

**SELYA**, *Circuit Judge*. Defendant-appellant Steven Chambers appeals from the district court's denial of his motion to withdraw his guilty plea and to hold an evidentiary hearing in connection therewith. But professed ignorance is not always bliss and, as we explain below, the district court did not err in denying these motions. By the same token, the defendant cannot make an end run around a waiver of appeal provision to which he subscribed.

The relevant facts are straightforward. In October of 2009, the defendant sold cocaine base (crack cocaine) to a government cooperator as part of a controlled buy that took place in Roxbury, Massachusetts. A federal grand jury thereafter returned an indictment charging the defendant with distributing cocaine base. See 21 U.S.C. § 841(a)(1). The defendant initially maintained his innocence. On March 14, 2011, he shifted direction and entered a guilty plea pursuant to a binding plea agreement (the Agreement). See Fed. R. Crim. P. 11(c)(1)(C).[1]

Roughly seven weeks later, the district judge received a letter from the defendant requesting leave to withdraw his plea because he had felt "rushed, pressured and coerced." It was not until some six months thereafter, however, that the defendant actually filed a motion to vacate his guilty plea. Although he

---

[1] A so-called "C-type" plea agreement is an agreement that, if accepted by the court, binds both the parties and the court to act in accordance with its terms. See United States v. Rivera-Martínez, 665 F.3d 344, 345 (1st Cir. 2011).

-2-

requested an evidentiary hearing, he did not receive one; and in due course the district court denied relief.

The court proceeded to sentencing on November 21, 2011. The Agreement bound the court to impose a term of immurement of not less than 72 months but not more than 120 months. Staying within these parameters, the court sentenced the defendant to serve 90 months in prison. This timely appeal ensued.

In this venue, the defendant argues that his plea was neither voluntary nor knowing because he did not realize at the time he entered it that the sentencing guidelines were merely advisory. In an attempt to bolster this argument, he asserts that during the change-of-plea colloquy the district court failed to comply with Federal Rule of Criminal Procedure 11(b)(1)(M), which, among other things, requires the court to ensure that the defendant understands the court's obligation to calculate the guideline sentencing range (GSR). Before considering the merits of this argument, we pause to iron out a potential wrinkle.

The Agreement contains a waiver of appeal provision. Such a provision forecloses appellate review of many claims of error. See, e.g., United States v. Nguyen, 618 F.3d 72, 74-76 (1st Cir. 2010); United States v. Gil-Quezada, 445 F.3d 33, 36-39 (1st Cir. 2006). But where, as here, a defendant enters a guilty plea and agrees to waive his right to appeal, but then seeks to challenge the district court's refusal to permit him to withdraw

his plea, a reviewing court must "address the merits of [his] appeal because his claim of involuntariness, if successful, would invalidate both the plea itself and the waiver of his right to appeal." United States v. Santiago Miranda, 654 F.3d 130, 136 (1st Cir. 2011). We start there.

The defendant maintains that the court below erred in denying his motion to vacate his guilty plea because he was not aware of the advisory nature of the sentencing guidelines. As a result, he says, he was unable to pursue "his lawful right to seek a variant sentence."

This argument rests, in the first instance, on the district court's ostensible failure to comply with the strictures of Rule 11(b)(1)(M). While the defendant did not make this precise argument below, he did argue more broadly that his plea was involuntary and unknowing because he was unaware of the advisory nature of the guidelines and thought that, unless he accepted the plea bargain, a mandatory minimum sentence would apply. For the sake of argument, we assume, favorably to the defendant, that the greater subsumes the lesser. Accordingly, we put to one side the government's insistence that the defendant's narrower contention is forfeited and review that contention for abuse of discretion. See United States v. Doyle, 981 F.2d 591, 594 (1st Cir. 1992).

A criminal defendant does not have an absolute right to withdraw a guilty plea. See United States v. Mercedes Mercedes,

428 F.3d 355, 359 (1st Cir. 2005); United States v. Negrón-Narváez, 403 F.3d 33, 36 (1st Cir. 2005). A previously tendered guilty plea may be withdrawn if the defendant can establish, prior to sentencing, that a "fair and just reason" for doing so exists. Negrón-Narváez, 403 F.3d at 36 (quoting Fed. R. Crim. P. 11(d)(2)(B)). In considering such a claim, an inquiring court "should focus on whether any of Rule 11's core concerns have been implicated, that is, whether the plea, when entered, was voluntary, intelligent, and knowing." Id.

The plea in this case was not a one-sided bargain: in exchange for it, the government agreed to refrain from filing an information under 21 U.S.C. § 851[2] and also agreed to cap any sentence at a point significantly below the GSR that otherwise might have been anticipated.[3] Despite these concessions, the defendant challenges the colloquy that accompanied his change of plea.

---

[2] A section 851 information carries with it the potential to boost the defendant's offense level and, thus, increase his sentence. See 21 U.S.C. § 851; see also Prou v. United States, 199 F.3d 37, 40 (1st Cir. 1999) (explaining the operation of this provision).

[3] To illustrate, the probation department calculated the defendant's GSR, independent of the Agreement, as 151-188 months. Moreover, the record reflects that the defendant would have faced a GSR of 262-324 months had a jury convicted him after the government filed a section 851 information. In contrast, the Agreement capped any possible sentence at 120 months.

His most specific challenge focuses on Rule 11(b)(1), which delineates certain requirements applicable to plea colloquies. It provides in pertinent part:

> Before the court accepts a plea of guilty[, it] . . . must address the defendant personally in open court. . . . [and] inform the defendant of, and determine that the defendant understands, the following: . . . the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a) . . . .

Fed. R. Crim. P. 11(b)(1)(M).

The defendant concedes that the rule does not explicitly require the district court to state to a defendant in haec verba that the sentencing guidelines are advisory. He urges, however, that "the logical 'ramifications'" of the rule demand such a statement.

In terms, Rule 11(b)(1)(M) does not mandate a talismanic statement, in formulaic language, as to the advisory nature of the sentencing guidelines. Because a district court need not follow a precise script in ensuring the voluntariness of a defendant's guilty plea, see United States v. Ward, 518 F.3d 75, 86 (1st Cir. 2008), we decline to read such a requirement into the rule.

Nevertheless, Rule 11(b)(1)(M) does require the court to put the guidelines into a meaningful perspective. In the case at

hand, the district judge's colloquy with the defendant satisfied the imperatives of the rule.

Relatedly, the defendant voices a more expansive plaint. Refined to bare essence, this plaint boils down to the proposition that he thought the guidelines were mandatory and therefore — but for his plea — the district court could not have sentenced him below the bottom of the GSR. The record belies this proposition.

During the change-of-plea hearing, the district court explained the mechanics of the guidelines. The court also verified that the defendant understood the Agreement and its various provisions. The court made it crystal clear that the defendant could speak up if he did not understand anything and could change his mind and stop the proceeding at any point before his plea was accepted. The court clarified that no mandatory minimum sentence would apply regardless of whether the government filed a section 851 information.

At the court's urging, the prosecutor explained the various GSRs that might attach if the defendant decided to proceed to trial. To be sure, the defendant initially exhibited some confusion about the sentence that the court could impose absent the Agreement; but the court took pains to dispel that confusion. Among other things, the court made pellucid that the sentencing ranges were not mandatory and that it could impose a sentence below the GSR if it thought such a sentence advisable. Furthermore, the

court emphasized that the ultimate sentencing decision was in its sole discretion.

The defendant told the court that he understood the Agreement and acknowledged that he had the benefit of "an excellent lawyer." He stated unequivocally that his reason for entering into the Agreement was to avoid the GSR that probably would result if the government were to file the section 851 information. After the confusion over potential sentencing ranges was resolved, the defendant reiterated that he wished to proceed with his plea because the capped ten-year maximum term of imprisonment limned in the Agreement was attractive to him.

Viewed against this background, the defendant's claim that he misunderstood the advisory nature of the guidelines strikes us — as it did the court below — as a piece of revisionist history. An objectively reasonable appraisal of what transpired at the change-of-plea hearing leaves no room to doubt that the defendant understood the district court's statements. Nothing in the colloquy, fairly read, undermines the knowing and voluntary nature of his plea.

We think it telling that the defendant manifested a strong desire to avoid the higher GSRs that the prosecutor outlined. Equally telling is the defendant's unconditional acknowledgment of his comprehension of the district court's thorough explanation of the Agreement, the situation, the

guidelines, and the outcomes that might eventuate should he lose at trial. A defendant's statements during a change-of-plea colloquy ought to be binding upon him in the absence of good cause to disregard them. See United States v. Gates, ___ F.3d ___, ___ [No. 10-2163, slip op. at 24]; Santiago Miranda, 654 F.3d at 138. The defendant has not shown good cause here.

To cinch matters, an examination of Rule 11's core concerns fully supports a denial of the defendant's motion. Such an inquiry requires us to examine the totality of the circumstances and to give weight to the timing of the attempted plea retraction, the plausibility of the proffered reason for withdrawing the plea, and the presence or absence of a claim of innocence. Mercedes Mercedes, 428 F.3d at 359.

In this case, it was within the district court's discretion to find that these factors, collectively, counseled in favor of rejecting the attempt to withdraw the plea. The time factor is somewhat of a wash. While there was a seven-month delay between the defendant's guilty plea and his filing of a formal motion to withdraw it, the defendant did indicate, within a matter of seven weeks, that he was having second thoughts. As we already have explained, the proffered reason for revoking the plea is

implausible.  And, finally, the defendant's motion did not embody a claim of innocence.[4]

We have said before, and today reaffirm, that "a defendant's lament that he misjudged the consequences of his guilty plea, without more, is not a fair and just reason for setting the plea aside."  United States v. De Alba Pagan, 33 F.3d 125, 127 (1st Cir. 1994).  It follows that a defendant may not "withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the . . . likely penalties attached to alternative courses of action."  Brady v. United States, 397 U.S. 742, 757 (1970).

These tenets are dispositive here.  The district court did not err in denying the defendant's motion to vacate his guilty plea.

Relatedly, the defendant assigns error to the district court's refusal to convene an evidentiary hearing on his plea-withdrawal request.  In such a situation, we review a district court's denial of a motion for an evidentiary hearing for abuse of discretion.  See Santiago Miranda, 654 F.3d at 137.  Appellate review starts with the premise that "a [criminal] defendant is not

_____

[4] On appeal, the defendant optimistically suggests that the record contains "an implicit assertion of legal innocence."  This suggestion appears to elevate hope over reason.  See Gates, ___ F.3d at ___ [No. 10-2163, slip op. at 23-24].  The defendant expressly admitted his guilt both in the Agreement and during the change-of-plea hearing.  His motion to vacate could have, but did not, repudiate these admissions.

-10-

entitled to an evidentiary hearing on every motion he chooses to file." United States v. Gonzalez, 202 F.3d 20, 29 (1st Cir. 2000).

In connection with an attempted plea retraction, a district court is required to grant a motion for an evidentiary hearing only if, at a bare minimum, "the defendant alleges facts which, if taken as true, would entitle him to relief." Santiago Miranda, 654 F.3d at 136 (internal quotation marks omitted). No evidentiary hearing is needed if the defendant's allegations "are contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact." Id. at 137 (internal quotation marks omitted).

As noted above, the defendant's importuning that his plea was involuntary and unknowing is contradicted by the record. The district judge had everything that he needed in the paper record to determine whether the defendant's guilty plea should be vacated. Consequently, it was within his discretion to deny the defendant's motion for an evidentiary hearing.

The defendant's next claim of error is no more robust. The Agreement contains a waiver of appeal provision. The defendant concedes that his appeal falls within the literal scope of this provision, but asserts that the waiver of appeal is nugatory because the Agreement itself is invalid. As a fallback, he contends that enforcement of the waiver would result in a miscarriage of justice.

-11-

A waiver of appeal in a criminal case, entered knowingly and voluntarily, is generally enforceable. See Nguyen, 618 F.3d at 74; United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001). To qualify, the waiver must be stated clearly and its scope must be definite. See Teeter, 257 F.3d at 24. In addition, the district court must "question the defendant specifically about [his] understanding of the waiver provision and adequately inform [him] of its ramifications." Id. Even if these criteria are satisfied, a waiver of appeal may be disregarded if enforcing it would cause a miscarriage of justice. Id. at 25.

We need not tarry over the defendant's argument that the waiver of appeal is nugatory because the Agreement is invalid. While such an argument would have considerable bite if its premise were correct, see United States v. Ortiz-García, 665 F.3d 279, 285 (1st Cir. 2011); Santiago Miranda, 654 F.3d at 136, we already have defenestrated the defendant's claim that the Agreement itself is invalid. The defendant's piggybacked claim of error is, therefore, untenable.

This leaves the defendant's more general asseveration: that enforcement of his waiver of appeal would result in a miscarriage of justice. To determine whether a waiver of appeal effects a miscarriage of justice, we consider "the character, clarity, and gravity of the claim of error, its impact on the defendant, any possible prejudice to the government that might

accompany a refusal to honor the waiver, and the extent to which the defendant can fairly be said to have acquiesced in the result." Nguyen, 618 F.3d at 75. The miscarriage of justice exception is strong medicine. Consequently, it should "be applied sparingly and without undue generosity." Teeter, 257 F.3d at 26. A showing of garden-variety error will not suffice: "[t]riggering the miscarriage of justice exception requires, at a bare minimum, an increment of error more glaring than routine reversible error." Nguyen, 618 F.3d at 75.

To the extent that the defendant bases his miscarriage of justice claim on his supposed misapprehension of the advisory nature of the sentencing guidelines, our previous discussion is dispositive. What remains — his insistence that the government's case against him "was less than overwhelming" — is nothing more than empty rhetoric, debunked by the defendant's own admissions during the change-of-plea colloquy. The short of it is that the defendant has not shown any error, let alone the glaring strain of error needed to fuel a miscarriage of justice finding.

There is one loose end. In advocating for the withdrawal of his guilty plea, the defendant seems to suggest that he received ineffective assistance of counsel. Because the waiver of appeal provision contains an explicit exception for challenges based on ineffective assistance of counsel, we comment briefly on this suggestion. See United States v. McCoy, 508 F.3d 74, 77 (1st Cir.

2007) (explaining that "[e]ven a knowing and voluntary appeal waiver only precludes appeals that fall within its scope").

The defendant's ineffective assistance claim (to the extent that one exists) was not raised below. Although "[t]he Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel," Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994), a defendant lacks "an absolute right" to bring such a "claim for the first time on direct review of a conviction or sentence," United States v. Rivera-Orta, ___ F.3d ___, ___ [No. 11-1927, slip op. at 9].

"We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993). This principle governs here.

We need go no further. For the reasons elucidated above, we uphold the judgment of the district court; without prejudice, however, to the right of the defendant, should he so choose, to raise an ineffective assistance of counsel claim by way of a petition for collateral review. See 28 U.S.C. § 2255.

**So Ordered.**