# United States Court of Appeals
## For the First Circuit

No. 12-1738

UNITED STATES OF AMERICA,

Appellee,

v.

DOMINGO RAMOS-MEJÍA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Alejandra Bird López on brief for appellant.
Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, on brief for appellee.

July 1, 2013

**SELYA, Circuit Judge.** Defendant-appellant Domingo Ramos-Mejía asseverates that he did not understand the criminal intent required as an element of the crime to which he pleaded and that the district court accepted his guilty plea to that charge without an adequate factual basis. For these reasons, he urges us to vitiate his guilty plea. After careful consideration, we reject the appellant's asseverational array.

The travel of the case is easily traced. A federal grand jury sitting in the District of Puerto Rico indicted the appellant on a charge of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine. See 21 U.S.C. §§ 841(a)(1), 846. He initially maintained his innocence, but later entered into a plea agreement. In pursuance of that agreement, he pleaded guilty to conspiracy to possess with intent to distribute at least 3.5 but less than 5 kilograms of cocaine (a quantity below that originally charged in the indictment).

The district court accepted the plea and subsequently imposed a 78-month incarcerative sentence. This timely appeal ensued.

Before turning to the meat of this appeal, we pause to note that the plea agreement contained a waiver-of-appeal provision. This provision purposed to foreclose any appeal as long as the district court accepted the plea and sentenced the appellant in accordance with the plea agreement's terms and recommendations.

But even though the district court sentenced the appellant within the parameters of the plea agreement, the waiver-of-appeal provision does not pretermit this appeal. Where, as here, an appeal challenges the validity of the plea itself, a waiver-of-appeal provision lacks force. See United States v. Chambers, 710 F.3d 23, 27 (1st Cir. 2013). After all, if a plea is invalid, the plea agreement (and, thus, the waiver provision contained within it) disintegrates.

We begin our discussion of the merits with the abecedarian proposition that a defendant has no absolute right to withdraw his guilty plea. See United States v. Mercedes Mercedes, 428 F.3d 355, 359 (1st Cir. 2005). When, as in this case, a defendant seeks for the first time to withdraw his plea in the court of appeals, his request will be granted only if he can show that the district court's acceptance of the plea was plainly erroneous. See United States v. Davila, No. 12-167, 2013 WL 2631064, at *7-8 (June 13, 2013). Plain error review imposes a heavy burden on the appellant, who must demonstrate: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Against this backdrop, we turn to the appellant's assertion that his plea was not knowing, intelligent, and voluntary.  Federal Rule of Criminal Procedure 11(b)(1)(G) requires that a district court, before accepting a guilty plea, "must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading."  This rule functions "to ensure that a defendant who pleads guilty does so with full comprehension of the specific attributes of the charge and the possible consequences of the plea."  United States v. McDonald, 121 F.3d 7, 11 (1st Cir. 1997).

The charge to which the appellant pleaded guilty involved conspiracy to possess with intent to distribute drugs.  Proof of such a charge entails proof of the existence of the charged conspiracy, the defendant's knowledge of it, and his voluntary participation in it.  See United States v. Nelson-Rodriquez, 319 F.3d 12, 27-28 (1st Cir. 2003).  A conspiracy charge requires, at a minimum, the same degree of criminal intent as the underlying substantive offense.  Ingram v. United States, 360 U.S. 672, 678 (1959).  It follows that, for guilt to attach in a drug conspiracy case, a defendant must have conspired knowingly to possess the drugs with the intent to distribute them.  See United States v. Echeverri, 982 F.2d 675, 677-79 (1st Cir. 1993).

The appellant asserts that, when he entered his plea, he was unaware that the government had to prove his knowledge of a

-4-

conspiracy to distribute drugs (as opposed to some other contraband) and his specific intent to effectuate the object of the conspiracy (distributing drugs). He suggests that the district court kept him in the dark by failing sufficiently to inform him about these matters, preferring instead to read the charge from the indictment and then inquire whether that was what he had done. The appellant posits that, by charting such a course, the court violated Rule 11(b)(1)(G).[1]

In this case, the change-of-plea colloquy, though not a textbook model, was adequate. In order to satisfy Rule 11, the district court need not employ a "specific script, a set of magic words, or even certain types of inquiries." United States v. Ward, 518 F.3d 75, 83 (1st Cir. 2008). Here, the court assured itself of the defendant's competence to plead, had the prosecutor summarize both the plea agreement and the government's available proof, and obtained the appellant's acknowledgment that those summaries were accurate. The appellant then confirmed to the court his desire "[t]o plead guilty [to] what [he was] being accused of."

The court made certain that the appellant had read the indictment and understood both the charge and the terms of the plea agreement. The court also verified that the appellant had reviewed these materials with his attorney. Finally, the court read aloud

---

[1] In support, the appellant also invokes the Due Process Clause, U.S. Const. amend. V. But this reference adds nothing of substance to his claim and, so, we do not discuss it further.

-5-

the charge limned in the indictment, and the appellant agreed that he had knowingly participated in that activity.

This, we think, was enough. Rule 11(b)(1)(G) "does not require the court to explain the technical intricacies of the charges in the indictment." United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004). Under ordinary circumstances, it is sufficient in a plea colloquy for a district court to "ascertain that a defendant is aware of the nature of the charge against him by reading the charge in the indictment to the defendant and obtaining his competent acknowledgment that he understands the charge." United States v. Delgado-Hernández, 420 F.3d 16, 26 (1st Cir. 2005); see United States v. Corporán-Cuevas, 244 F.3d 199, 203 (1st Cir. 2001).

This is not to say that merely reading the formal charge will be sufficient in every case. The process through which the court ensures the defendant's understanding of the charge may vary depending on the attributes of the particular defendant, the nature of the specific offense, and the complexity of the attendant circumstances. See Corporán-Cuevas, 244 F.3d at 203; see also Fed. R. Crim. P. 11 advisory committee's note. One size does not fit all.

Here, however, the environmental factors were not extraordinary. This is a run-of-the-mine case, involving a mature defendant with a history of gainful employment. The appellant was

facing only a single charge — and that charge was not a complicated one.  Moreover, the circumstances attendant to the charged crime were straightforward.  Given these considerations, we believe that a reading of the charge sufficed.  See, e.g., United States v. Ramirez-Benitez, 292 F.3d 22, 27 (1st Cir. 2002).

If more were needed — and we doubt that it is — the record in this case contains other indicia of the appellant's appreciation of the elements of the charged crime.  The plea agreement contained a factual narrative that described what the government said it could prove.  It further explained that the appellant was pleading guilty to "knowingly and intentionally combining, conspiring, and agreeing with others to . . . possess with intent to distribute" cocaine.[2]  The word "cocaine" was underscored and in bold, making pellucid that the charged conspiracy was one trafficking in drugs, not other goods.  The text of the plea agreement is relevant to this appeal inasmuch as the agreement explicitly memorialized the appellant's review of it with his attorney, his satisfaction with his attorney's representation, the absence of any coercion, and his "full[] understand[ing]" of the matters described.  Absent good cause — and none is present

---

[2] Varying from the language of the indictment, the plea agreement contained a separate stipulation as to drug quantity. The stipulation provided that, "for purposes of this plea agreement [] this defendant shall be accountable for conspiring to possess with the intent to distribute at least, 3.5 kilograms, but less than 5 kilograms of cocaine."

here — a defendant ought to be bound by the statements that he makes to the district court.  See Chambers, 710 F.3d at 29; see also United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989) ("We will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.").

This brings us to the appellant's second claim of error. He contends that the record fails to establish an adequate factual basis for the mens rea element of the conspiracy charge.  In his view, the record does not evince either his knowledge that drugs were involved in the conspiracy or his intent to distribute them. The government's proffered facts, he says, establish only that he was seen in the vicinity of a meeting and, three months later, in a vehicle loaded with fake drugs.

This claim of error implicates Federal Rule of Criminal Procedure 11(b)(3), which requires that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  This safeguard "serves to ensure that the defendant's conduct actually corresponds to the charges lodged against him."  United States v. Jiminez, 498 F.3d 82, 86 (1st Cir. 2007).

The necessary showing, however, is fairly modest.  To satisfy the "factual basis" requirement, the evidence need not conclusively demonstrate guilt beyond a reasonable doubt.  See

United States v. Pimentel, 539 F.3d 26, 29 (1st Cir. 2008). Rather, the government need only show a rational basis in fact for the defendant's guilt. See id.; Delgado-Hernández, 420 F.3d at 27. In other words, there must be some "basis for thinking that the defendant is at least arguably guilty." Delgado-Hernández, 420 F.3d at 27 (internal quotation marks omitted).

To meet the "factual basis" standard, the government is not required to support every element of the charged crime by direct evidence. See United States v. Marrero-Rivera, 124 F.3d 342, 352 (1st Cir. 1997). A smoking gun is useful, but not essential.

Of particular pertinence for present purposes, a court may infer "[t]he factual predicate for the requisite mens rea . . . from all the evidence alluded to at the Rule 11 hearing." Id.; see Delgado-Hernández, 420 F.3d at 31. "[A]s long as the government's proffered facts, conceded by the defendant to be true, touch all the bases, there is a sufficient factual basis for the tendered plea." Jiminez, 498 F.3d at 87.

In this instance, the facts proffered by the government at the change-of-plea hearing (and acquiesced in by the appellant) revealed that the appellant and two accomplices went to a shopping center parking lot on or about March 1, 2011. While there, one of the appellant's companions, Rubén Darío Páez-Fontana (Páez), met with two other individuals to discuss a potential drug shipment.

One of these individuals was an undercover Drug Enforcement Administration (DEA) agent; the other was a confidential source (CS) working with the DEA. The undercover agent and the CS were part of a government "sting" operation. During the meeting, Páez agreed to pay the undercover agent for his help in bringing in by sea substantial quantities of cocaine and provided sea coordinates for the exchange point.

After some intervening communications, Páez met again with the CS. Páez told the CS that, after the drugs were retrieved at sea and brought to Puerto Rico, he would provide a truck for land transport. The CS would then stow the drugs in the truck and return the truck to Páez's henchmen.

The retrieval took place as planned. The CS, accompanied by undercover law enforcement officers, picked up a load of cocaine and heroin at the sea coordinates that Páez had provided. Shortly after the retrievers reached land, the appellant and another of Páez's associates, Marcelino Medina-Vásquez (Medina), met the CS with a truck. The CS and his confederates loaded the truck but, unbeknownst to the appellant and Medina, used ersatz drugs, not the real drugs that had been retrieved at sea. After the truck was loaded, the appellant and Medina drove it away, while Páez and a fourth accomplice followed in another vehicle. In short order, the authorities stopped both vehicles and arrested all four men.

These facts were more than adequate to allow the district court to conclude that the appellant was at least arguably guilty of participation in the charged conspiracy. Participation in a drug-trafficking conspiracy can be proved through circumstantial evidence. See United States v. Bergodere, 40 F.3d 512, 518 (1st Cir. 1994); Echeverri, 982 F.2d at 677-79. Here, a rational factfinder could conclude that the appellant was privy to the drug-trafficking scheme. Drug traffickers do not normally bring innocent parties to clandestine meetings set up to arrange for drug deliveries, see United States v. Ortiz, 966 F.2d 707, 711-12 (1st Cir. 1992); see also Echeverri, 982 F.2d at 677-78, and a factfinder could reasonably infer that the appellant's presence at the parking lot meeting was culpable. By like token, a factfinder could reasonably infer that the appellant's role in delivering the truck for loading — and leaving in it after the loading had been completed — was carried out with knowledge of the plot. The fact that only fake drugs were in the truck at the time of the arrest does not diminish the force of this inference. See United States v. Sánchez-Berríos, 424 F.3d 65, 77-78 (1st Cir. 2005).

To say more on this point would be to paint the lily. We conclude, without serious question, that the version of events proffered at the change-of-plea hearing was ample to ground inferences that the appellant knew that the conspiracy was arranging to import drugs and that he intended to facilitate the

delivery by his role in transporting drugs.  The bottom line, then, is that there was a suitable factual basis for the appellant's guilty plea.

We need go no further.  For the reasons elucidated above, we discern no error, plain or otherwise, in the district court's acceptance of the appellant's tendered guilty plea.  The appellant is not, therefore, entitled to withdraw his plea.

**Affirmed.**