# United States Court of Appeals
## For the First Circuit

No. 12-1903

UNITED STATES OF AMERICA,

Appellee,

v.

EDGARDO TORRES-VÁZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Howard, Selya and Lipez,

Circuit Judges.

Anita Hill Adames for appellant.
Carlos R. Cardona, Assistant United States Attorney, with whom
Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

September 27, 2013

**SELYA, <u>Circuit Judge</u>.** This case involves a defendant who pleaded guilty to conspiracy to commit promotional money laundering, stipulated to the amount of money laundered, and received a within-the-range prison sentence. His appeal seeks to vitiate his guilty plea on grounds of factual insufficiency. For good measure, the appeal asserts a claim of sentencing error. After careful consideration, we leave the defendant where we found him.

The stage is easily set. On November 9, 2011, a federal grand jury sitting in the District of Puerto Rico indicted defendant-appellant Edgardo Torres-Vázquez for his role in a money laundering conspiracy. The appellant initially maintained his innocence but later entered a guilty plea to a single count of conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

As a precursor to his change of plea, the appellant and the government entered into a plea agreement (the Agreement) that contained, among other things, a statement of facts, which the appellant vouchsafed was "accurate in every respect." The Agreement also embodied a stipulation to the effect that the appellant was accountable for the laundering of more than $1,000,000 but less than $2,500,000.

The Agreement proposed a specific sentencing outcome. In it, the parties concurred that the adjusted offense level under the federal sentencing guidelines was 27 — a figure that took into

account a 16-level enhancement corresponding to the stipulated value of the laundered funds. <u>See</u> USSG §2B1.1(b)(1)(I). Treating the appellant as a first-time offender (Criminal History Category I), the parties suggested that a guideline sentencing range (GSR) of 70-87 months was appropriate. They agreed jointly to recommend a prison sentence at the bottom of the GSR — 70 months — and not to advocate for any upward or downward variances.

Finally, the Agreement included a waiver-of-appeal provision. This provision purported to foreclose the appellant's right to appeal as long as the district court sentenced him in accordance with the terms of the Agreement.

On March 1, 2012, the district court convened a change-of-plea hearing. In the course of a lengthy colloquy with the appellant, the court read the charge and obtained the appellant's acknowledgment that he knowingly participated in the described activities. In addition, the court confirmed that the appellant had "decided to voluntarily waive [his] right to appeal" his sentence. The court then accepted the Agreement, took the plea, and continued the matter pending the preparation of a presentence investigation report (PSI Report).

On June 26, 2012, the district court held the disposition hearing. The court began by confirming that there were no objections to the factual account limned in the PSI Report. It then reiterated the key facts surrounding the appellant's

-3-

involvement in the money laundering conspiracy. Having completed these preliminaries and heard the appellant's allocution, the court imposed the mutually recommended 70-month incarcerative sentence. This timely appeal ensued.

We pause at the outset to note that the waiver-of-appeal provision does not end our inquiry. It is common ground that "[w]here, as here, an appeal challenges the validity of the plea itself, a waiver-of-appeal provision lacks force" with respect to that challenge. United States v. Ramos-Mejía, 721 F.3d 12, 14 (1st Cir. 2013). Consequently, we proceed to consider on the merits the appellant's entreaty that the district court erred in accepting his guilty plea.

Our standard of review is familiar. Because the claimed lack of a sufficient factual foundation was not raised below, we review the district court's acceptance of the guilty plea only for plain error. See United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005). Thus, we will sustain the assignment of error only if the appellant can demonstrate: "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). The appellant cannot satisfy these requirements.

-4-

Federal Rule of Criminal Procedure 11(b)(3) ordains that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Seizing on this requirement, the appellant contends that the record fails to establish a sufficient factual basis to ground his plea. Specifically, he submits that the government's proffered facts establish only that he transported money, and that transportation simpliciter is inadequate to satisfy the statutory requirements that a "financial transaction" be attempted and that the funds in issue be derived from a "specified unlawful activity." 18 U.S.C. § 1956(a)(1).

The record belies this contention. To establish a sufficient factual foundation for a plea, "the government need only show a rational basis in fact for the defendant's guilt." Ramos-Mejía, 721 F.3d at 16. This showing can be achieved even if the government does not "support every element of the charged crime by direct evidence." Id. After all, "[a] Rule 11 inquiry is not designed to prove a criminal defendant's guilt beyond all doubt." United States v. Jiminez, 498 F.3d 82, 87 (1st Cir. 2007). As long as the record evinces "some basis for thinking that the defendant is at least arguably guilty," no more is exigible. Ramos-Mejía, 721 F.3d at 16 (internal quotation marks omitted).

To support a conspiracy conviction, the government must show "that a conspiracy existed and that a particular defendant

agreed to participate in it" with the intention of committing the specified underlying offense.  <u>United States</u> v. <u>Sepulveda</u>, 15 F.3d 1161, 1173 (1st Cir. 1993).  Such a conspiracy may exist even if its ultimate objective is not accomplished.  <u>See</u> <u>United States</u> v. <u>David</u>, 940 F.2d 722, 735 (1st Cir. 1991).  Moreover, proof of a defendant's involvement in a conspiracy "may consist of indirect evidence, including inferences drawn from acts performed in furtherance of the conspiracy."  <u>Id.</u>  The needed facts "may be gleaned either from the defendant's admissions or from the prosecution's version of the evidence (to the extent that it is acknowledged by the defendant)."  <u>Jiminez</u>, 498 F.3d at 86.

With this framework in place, we move from the general to the specific.  Here, the facts proffered at the change-of-plea hearing and acknowledged as accurate by the appellant indicate that the appellant and a coconspirator traveled from Puerto Rico to Panama to attend a meeting with four other persons.  One of these individuals was operating as a confidential source (CS) for the Drug Enforcement Administration.  The purpose of that meeting, which took place in September of 2010, was to discuss the transportation of money for the purchase of drugs.

In Miami four months later, the appellant reviewed the details of this scheme with a coconspirator and the CS. Subsequently, the appellant and a coconspirator exchanged several telephone calls with the CS in order to coordinate the appellant's

delivery of $1,665,000 to finance the purchase of the drug load.[1] On March 10 — while the appellant was on his way to meet with the CS — the Puerto Rico police stopped his vehicle. This routine traffic stop resulted in the seizure of $1,664,044 in cash.

In the Agreement, the appellant admitted that these facts were "accurate in every respect." During the change-of-plea colloquy, he also admitted both that the described events comprised the factual basis for his guilty plea and that he knew the seized funds were the proceeds of illicit drug trafficking.

There was more. A claim that a guilty plea rests on an insufficient factual basis, raised for the first time on appeal, opens the entire record for appellate inspection. See United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004); United States v. Delgado-Hernández, 420 F.3d 16, 28 (1st Cir. 2005). In this case, the PSI Report summarized the events surrounding the appellant's transportation of over $1,600,000 of drug money to be used to finance further drug purchases. At the disposition hearing, the court confirmed that the appellant had no objection to the factual account contained in the PSI Report. In the absence of such an objection, the PSI Report is itself proof of the recited facts. See United States v. Zorrilla, 982 F.2d 28, 30-31 (1st Cir. 1992).

_____

[1] The record is obscure as to whether this coconspirator is the same coconspirator with whom the appellant met in Miami. For present purposes, it makes no difference.

We need not paint the lily.  Intent to launder money can be proven either through the defendant's own statements or through circumstantial evidence, or through a combination of admissions and circumstances.  See United States v. Cruzado-Laureano, 404 F.3d 470, 483 (1st Cir. 2005).  Based upon the appellant's extensive admissions and the circumstances surrounding his possession and transportation of over $1,600,000 in drug-derived cash, a rational factfinder could conclude that the appellant intended to complete a financial transaction; that he collogued with others to this end; that he was aware that the funds in question were the proceeds of unlawful activities; and that those funds were to be used to purchase drugs.  It follows inexorably that there was no error, plain or otherwise, in the district court's acceptance of the appellant's guilty plea.

This leaves only the appellant's claim of sentencing error.  Refined to bare essence, this claim posits that there was an inadequate factual basis for the 16-level sentencing enhancement applied by the district court because the government did not prove, piece by piece, the unlawful provenance of the predicate funds.[2]

---

[2] While this claim of error is almost certainly foreclosed by the waiver-of-appeal provision, see, e.g., United States v. Chambers, 710 F.3d 23, 30 (1st Cir. 2013); United States v. Calderón-Pacheco, 564 F.3d 55, 58 (1st Cir. 2009), the shortest distance between two points is a straight line.  With this in mind, we think it is simpler and more direct to dispose of the claim on the merits.

This claim is hopeless. As we have said, the appellant admitted in no uncertain terms both that the cash seized was derived from illicit drug trafficking and that he knew as much. To cinch matters, the Agreement contains a frank stipulation to this effect. A party is normally bound by a stipulation accepted by the district court. See United States v. Rivera-Rodríguez, 489 F.3d 48, 59 (1st Cir. 2007). The appellant has not identified any plausible reason for relieving him from the stipulation that he entered into with his eyes wide open. Under these circumstances, the stipulation removed any necessity for independent proof of the stipulated facts. See United States v. Silva, 554 F.3d 13, 23-24 (1st Cir. 2009); United States v. Serrano-Beauvaix, 400 F.3d 50, 54 (1st Cir. 2005); United States v. Meade, 175 F.3d 215, 223 (1st Cir. 1999).

We need go no further. For the reasons elucidated above, the conviction and sentence are affirmed.

**Affirmed.**