# United States Court of Appeals
## For the First Circuit

No. 21-1419

UNITED STATES,

Appellee,

v.

OMAR ANDRES GARCÍA-NÚÑEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson, Circuit Judge,
and Burroughs, District Judge.*

Carlos M. Sánchez La Costa, with whom Sánchez La Costa Law
Firm was on brief, for appellant.
Julia M. Meconiates, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

June 15, 2023

**Burroughs, District Judge.** In November 2019, Defendant-Appellant Omar Andres García-Núñez ("García-Núñez") was charged with two counts related to his possession of a gun, ammunition, drugs, and items suggestive of drug trafficking. He pled guilty to one of the counts, possession of a firearm in furtherance of a drug trafficking crime, but later moved to withdraw his plea. The district court denied the motion and sentenced him to seventy-two months' imprisonment on that one count. García-Núñez now appeals the district court's denial of his motion to withdraw his plea. Finding no error, we affirm.

## I. Facts and Prior Proceedings

Because García-Núñez pled guilty pursuant to a plea agreement "we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report (PSR), and the transcript of the sentencing hearing." United States v. Bruzón-Velázquez, 49 F.4th 23, 26 (1st Cir. 2022) (quoting United States v. De la Cruz, 998 F.3d 508, 509 (1st Cir. 2021) (alteration omitted)).

A. The Offense and Arrest

On November 1, 2019, law enforcement agents executed a search warrant at the Villa Sabana Public Housing Project in Bayamon, Puerto Rico. In conducting the search, law enforcement agents seized a white box with $91.00 in cash, a small oval container that held a "green leafy substance" suspected to be

marijuana, and an electronic scale "commonly used to weigh narcotics," all from the living room. From the kitchen, agents seized an orange plastic container with ten blue pills, and a black sock that contained a plastic bag with six rounds of nine-millimeter ammunition. In García-Núñez's bedroom closet, agents found and seized a small satchel that held $1,778 in cash and a drug ledger with names and quantities, a Black Peace Keeper rifle bag that held a loaded AR type pistol with a magazine with 27 rounds of .223 caliber ammunition and no serial number, as well as two additional loaded rifle magazines – one with 30 rounds and the other with 20 rounds of .223 caliber ammunition.

Later that afternoon at the police precinct, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives read García-Núñez his Miranda rights. García-Núñez waived his right to remain silent and told the agents that everything seized from the apartment belonged to him.

On November 7, 2019, a grand jury indicted García-Núñez on two charges: (1) being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Count One"); and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("Count Two").

García-Núñez initially entered a plea of not guilty. On January 13, 2020, he signed a plea agreement in which he agreed to plead guilty to Count Two, possession of a firearm in furtherance

of a drug trafficking crime. A change-of-plea hearing was held the same day. At that hearing, defense counsel notified the district court that the parties did not have the lab results for the substance believed to be marijuana. Defense counsel explained that he was alerting the district court to this fact because García-Núñez was pleading guilty to possessing a firearm in furtherance of a drug trafficking offense. At the district court's invitation, the government stated that the lack of results from the drug lab was not a bar to proceeding with the change—of—plea. The parties agreed to proceed with the plea.

During the ensuing colloquy, García-Núñez stated that he was not under the influence of medication, drugs or alcohol; that he had discussed the charges and the plea offer with his counsel; that he understood the charges against him, his rights, and the terms and consequences of the plea offer; and that he wanted to plead guilty. The details of the charges were read to García-Núñez multiple times, first by the prosecutor and then by the district court. After the district court described the counts brought against García-Núñez, including that he was charged with possessing a firearm and ammunition in furtherance of a drug trafficking crime, specifically, possession with intent to distribute a controlled substance, the district court asked, "Mr. García, is that what you did?" and García-Núñez responded "[y]es." The district court then followed up and asked, "[i]s that what you

are pleading guilty to?" and García-Núñez again responded, "[y]es." The district court accepted the plea and set a date for sentencing.

Almost fifty days later, on March 3, 2020, García-Núñez moved under Federal Rule of Criminal Procedure 11(d) to withdraw his guilty plea, claiming that he was "legally and factually innocent" and that the government's version of the facts, which he had admitted to at the change—of—plea hearing, did not support a § 924(c) conviction because there was no factual basis for the underlying drug trafficking offense. García-Núñez further asserted that, although he admitted to possessing a firearm, the plea agreement did not specify that his possession was in furtherance of a drug trafficking offense. The government opposed the motion.

The district court denied García-Núñez's motion to withdraw his guilty plea without a hearing, finding that there was a sufficient factual basis for the underlying drug trafficking crime and the "in furtherance" element of the § 924(c) charge. United States. v. García-Núñez, No. 19-723, 2020 WL 2544902, at *1 (D.P.R. May 19, 2020). Regarding the underlying offense, possession with the intent to distribute a controlled substance, the court noted that the government was required to show that García-Núñez knowingly or intentionally possessed a controlled substance and that he intended to distribute it. Id. at *4. It

also set forth several factors that the First Circuit has instructed lower courts to consider when determining whether a defendant had the intent to distribute, including, among others, the amount of drugs, the quantity of cash, and the presence of drug paraphernalia or firearms. Id. at *5. The court found that the government's statement of the facts at the plea hearing, which García-Núñez adopted, established an adequate factual basis for the underlying drug trafficking offense where García-Núñez had admitted to possessing a small amount of marijuana, a scale commonly used to weigh narcotics, a drug ledger with names and quantities, a large amount of money in cash, a loaded firearm without a serial number as well as two additional loaded magazines of ammunition. Id.

The court also found there was a sufficient factual basis to support that García-Núñez possessed a firearm in furtherance of the underlying drug trafficking crime because the loaded firearm and the loaded magazines were found in close proximity to $1,778 in cash and the drug ledger. Id. at *6.

The court rejected García-Núñez's claim of legal innocence because that argument required that there have been an insufficient factual basis for the plea, an argument the court rejected. Id. at *6-7. The court also observed that García-Núñez, in arguing that he was legally innocent, ignored all the inculpatory facts that he agreed to in the plea agreement and at

- 7 -

the change—of—plea hearing and did not explain why he pled guilty or why he possessed a loaded firearm in close proximity to a large sum of money and a drug ledger. Id. at *7.

Finally, the court concluded that although the relative timeliness (almost 50 days) of García-Núñez's request to withdraw his plea improved his position, it did not require the court to allow the motion because timing is merely one factor and none of the other relevant factors weighed in his favor. Id. at *7–8.

On May 7, 2021, the district court sentenced him to seventy-two months' imprisonment. This appeal followed.

## II. Discussion

### A. The Factual Basis for the Guilty Plea

García-Núñez first argues that the district court erred by denying his motion to withdraw the guilty plea because his contention that the plea lacked a factual basis is a "fair and just reason to withdraw his guilty plea." Despite this framing, "the gist of the argument that he makes is not that the district court should have allowed him to withdraw the plea . . . , but, rather, that the court abused its discretion by accepting it in the first place." United States v. Negrón-Narváez, 403 F.3d 33, 37 (1st Cir. 2005). Therefore, we follow the course laid out in Negrón-Narváez and treat this challenge as a distinct claim in its own right. See id.

So viewed, García-Núñez contends that the district court

erred by accepting his guilty plea because it allegedly lacked a factual basis. See United States v. Ventura-Cruel, 356 F.3d 55, 60-61 (1st Cir. 2003) (holding that, before entering judgment, a district court had the authority to accept and subsequently reject a guilty plea for lack of a factual basis). We review the district court's acceptance of a guilty plea for abuse of discretion. Negrón-Narváez, 403 F.3d at 37.

Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea. . . . In other words, the court must decide that 'the defendant's conduct actually corresponds to the charges lodged against him.'" United States v. Laracuent, 778 F.3d 347, 350 (1st Cir. 2015) (alteration in original) (quoting United States v. Jiminez, 498 F.3d 82, 86 (1st Cir. 2007)). "The facts relevant to this inquiry may be gleaned either from the defendant's admissions or from the prosecution's version of the evidence (to the extent that it is acknowledged by the defendant)." Jiminez, 498 F.3d at 86 (citing United States v. Gandia-Maysonet, 227 F.3d 1, 6 (1st Cir. 2000)).

The Rule 11 inquiry "is not designed to be a test of guilt versus innocence." Negrón-Narváez, 403 F.3d at 37. The showing necessary to support a factual basis is "fairly modest" and while the government must "show a rational basis in fact for the defendant's guilt," United States v. Ramos-Mejía, 721 F.3d 12,

16 (1st Cir. 2013), it "need not support every element of the charge with direct evidence," Laracuent, 778 F.3d at 350 (citing Ramos-Mejía, 721 F.3d at 16). In sum, "[a]s long as the record evinces 'some basis for thinking that the defendant is at least arguably guilty,' no more is exigible." United States v. Torres-Vázquez, 731 F.3d 41, 45 (1st Cir. 2013) (quoting Ramos-Mejía, 721 F.3d at 16).

To prove possession of a firearm "in furtherance of" a drug trafficking crime, the government must prove that the defendant: "1) committed a drug trafficking crime; 2) knowingly possessed a firearm; and 3) possessed the firearm in furtherance of the drug trafficking crime." United States v. Pena, 586 F.3d 105, 112 (1st Cir. 2009).

García-Núñez first asserts that there was no factual basis to find that he committed the underlying drug offense, possession of a controlled substance with intent to distribute. He argues that because he never admitted to trafficking drugs and only a small amount of marijuana was seized during the search, it is "more reasonable to attribute [the marijuana] to personal use" rather than to an intent to distribute. We disagree.

To prove possession with intent to distribute, "the government must show that the defendant[] knowingly and intentionally possessed, either actually or constructively, a controlled substance with the specific intent to distribute."

- 10 -

United States v. Ayala-Vazquez, 751 F.3d 1, 12 (1st Cir. 2014). Whether there was an intent to distribute depends on the consideration of several factors including the amount of drugs, "the purity of the drugs at issue, the quantity of cash on a defendant, the manner in which the drugs were packaged, the presence of drug paraphernalia, the lack of any evidence showing a defendant used or consumed the type of drug seized, and the presence of firearms." United States v. Fernández-Santos, 856 F.3d 10, 19 (1st Cir. 2017) (cleaned up).

Here, the district court found that there was a factual basis for the underlying drug trafficking crime based on the items seized during the search of García-Núñez's home, all of which he admitted were his. This included a small box with $91.00 in cash, a small amount of marijuana, the scale, blue pills, and ammunition, as well as the drug ledger with names and quantities, $1,778 in cash, a loaded firearm, and two loaded magazine cartridges found in his bedroom closet. García-Núñez, 2020 WL 2544902, at *5. Unable to dispute that he possessed a controlled substance, García-Núñez argues that the quantity of marijuana seized suggests that it could have been for personal use. The district court, however, aptly dispensed with that argument, finding, consistent with our precedent, that although it is possible that the marijuana could have been for personal use, that possibility is not sufficient, without more, to demonstrate the lack of a factual

basis for the plea.  Id.  This is particularly true here where other indicia of drug trafficking, including cash, a scale and a drug ledger were also located in close proximity to the marijuana.

García-Núñez also argues that there was no factual basis to support that he possessed a firearm "in furtherance" of the drug trafficking offense.  To show the "in furtherance" element, the government "must establish 'a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime.'" United States v. Rodríguez-Torres, 939 F.3d 16, 30 (1st Cir. 2019) (quoting United States v. Gurka, 605 F.3d 40, 44 (1st Cir. 2010)).

> In assessing whether the requirement has been satisfied, we analyze the evidence "from both objective and subjective standpoints." The objective factors include: "(1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances. Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds," but even if that evidence is lacking, "the jury may infer intent from the objective circumstances."

United States v. Mendoza-Maisonet, 962 F.3d 1, 15 (1st Cir. 2020) (citations omitted).

We find that the district court did not err in concluding that the government showed a rational basis in fact for García-Núñez's guilt with respect to the "in furtherance" element of the § 924(c) count.  It is worth repeating that

[w]hen determining whether a sufficient factual basis

- 12 -

exists to support a guilty plea, the question before the court "is not whether a jury would, or even would be likely to convict: it is whether there is enough evidence so that the plea has a rational basis in facts that the defendant concedes or that the government proffers as supported by credible evidence."

United States v. Delgado-Hernández, 420 F.3d 16, 27 (1st Cir. 2005) (quoting Gandia-Maysonet, 227 F.3d at 6).

Here, to show the requisite "nexus" between the firearm and the drug crime, the government provided evidence that the loaded firearm, which lacked a serial number, was found close to the drug ledger, the $1,778 in cash, and the ammunition. We have repeatedly held that circumstances suggesting that a firearm was possessed for the protection of drugs *or* sales proceeds can constitute possession in furtherance of a drug crime. United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008); United States v. Alverio-Meléndez, 640 F.3d 412, 420 (1st Cir. 2011).

The district court relied on such precedent in finding that the close proximity of the loaded firearm to both "a large sum of money" and the "drug ledger with names and quantities" supported an inference that the firearm was "kept there to protect those items." García-Núñez, 2020 WL 2544902, at *5-6. García-Núñez does not develop any argument on appeal -- or in the district court -- that the "large sum of money" was not "drug proceeds." See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, the firearm's serial number was obliterated,

- 13 -

which further supports an inference that García-Núñez possessed the firearm with the specific intent of furthering the underlying drug crime.  See Marin, 523 F.3d at 28.  The district court's conclusion in this respect was not error.

García-Núñez contends that his case is similar to United States v. Monzon, 429 F.3d 1268, 1271-74 (9th Cir. 2005).  In that case, though, the record did not provide a basis for concluding that the defendant possessed a gun in close proximity to drug proceeds and a drug ledger.

García-Núñez also argues there cannot be a factual basis for the offense because he did not admit to drug trafficking or to possessing the firearm to further a drug trafficking offense.  His argument is belied by the facts.  During the plea colloquy, the district court explained to García-Núñez that he was charged with possessing a firearm in furtherance of a drug crime, specifically, possession with intent to distribute a controlled substance, and asked him, "is that what you did?" and he responded, "[y]es."  In other words, contrary to his present contention, García-Núñez did admit to the underlying drug crime.  He also admitted to possessing the firearm in furtherance of a drug crime.  In any event, to find there was a factual basis for the § 924(c) charge, the record need only reflect "some basis for thinking that the defendant is at least arguably guilty," Torres-Vázquez, 731 F.3d at 45, and that standard is amply met here based on the items seized from

- 14 -

García-Núñez's home, which, again, he admits were his,[1] and the proximity of the loaded firearm to the large sum of money. The district court did not err in reaching that same conclusion.

B.   Withdrawal of the Guilty Plea

Next, García-Núñez contends that the district court erred in denying his motion to withdraw the guilty plea because it was not knowing, intelligent, and voluntary.

It is axiomatic that "a defendant has no absolute right to withdraw a guilty plea," United States v. Caramadre, 807 F.3d 359, 366 (1st Cir. 2015), and that the defendant bears the burden "to prove that there is a 'fair and just reason' to withdraw the guilty plea prior to sentencing," Bruzón-Velázquez, 49 F.4th at 30 (further citation omitted). To determine whether a defendant has shown a "fair and just reason," courts consider "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion; whether there is a serious claim of actual innocence; [and] the timing of the motion . . . ." United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) (citing United States v. Padilla-Galarza, 351 F.3d 594, 597 (1st Cir. 2003)). "If these factors weigh in favor of allowing the defendant to withdraw his guilty plea, courts also

---

[1]   We note that even García-Núñez appears to concede, in his opening brief, that the evidence seized from his house "may be sufficient" to support the underlying offense of drug trafficking.

- 15 -

consider any prejudice the government would face as a result." Fernández-Santos, 856 F.3d at 15 (citing Caramadre, 807 F.3d at 366).

We have often repeated that the "core concerns of Rule 11," Isom, 580 F.3d at 52, whether the plea was knowing, intelligent, and voluntary, are the most important when reviewing a district court's denial of a motion to withdraw a plea, United States v. Fonseca, 49 F.4th 1, 7 (1st Cir. 2022) (citing Isom, 580 F.3d at 52).

Although we generally review the denial of a motion to withdraw a guilty plea before sentencing for abuse of discretion, where, as here, the issue was not raised in the district court, our review is limited to plain error. United States v. Cheal, 389 F.3d 35, 40 (1st Cir. 2004) ("Appellants who claim relief because of an allegedly flawed change-of-plea hearing face a high hurdle when they have not first raised their objections in the court below. . . . In such cases, we review only for plain error." (citations omitted)).

García-Núñez acknowledges that "the most significant" factor is whether the plea was knowing, intelligent, and voluntary. He does not argue that, if he cannot satisfy the knowing-intelligent-and-voluntary prong of the analysis, he can nonetheless prevail based on the timing of his motion to withdraw or his assertions of legal innocence. Thus, we begin with his

contention that the district court erred by denying his motion to withdraw because the plea was not knowing, intelligent, and voluntary. Because we find that García-Núñez's plea was knowing, intelligent, and voluntary, we need not consider his remaining contentions regarding the timing of his motion to withdraw the guilty plea or his assertions of legal innocence.

García-Núñez first contends that the plea was not knowing, intelligent, and voluntary because, at the time he entered the plea at the change-of-plea hearing, he did not know that his "counsel had failed to obtain the laboratory result of the 'leafy substance' found in his house," and that, as a result, the government allegedly lacked a factual basis for the § 924(c) conviction.

García-Núñez's contention rests on the mistaken premise that the § 924(c) charge was based solely on the marijuana discovered in his home. It is undisputed, however, that during a sidebar at the beginning of the change-of-plea hearing, counsel for the government informed both the district court and defense counsel that the § 924(c) charge was premised on the firearms being used "to protect the money [that] derive[s] from the d[r]ug trafficking." Therefore, it is clear that García-Núñez's lawyer, at least, knew that the § 924(c) charge did not hinge solely on the "leafy green substance," and "[u]nder ordinary circumstances . . . a lawyer's knowledge is attributed to [the] client." Wood

- 17 -

v. Spencer, 487 F.3d 1, 4-5 (1st Cir. 2007). We see no error, much less plain error.

Next, García-Núñez contends that, given the complexity of 18 U.S.C. § 924(c), he could not have understood the charge without the "advice of his attorney" and that there was insufficient evidence in the record to show that he understood the charges against him. Specifically, García-Núñez asserts that the guilty plea was not knowing, intelligent, and voluntary because "the [d]istrict [c]ourt never asked [him] to state, in his own words, what he believed to be the crime he committed," and that the district court therefore failed to meet its obligation to "ensur[e] that the defendant understands the elements of the charges that the prosecution would have to prove at trial," United States v. Matos-Quiñones, 456 F.3d 14, 22 (1st Cir. 2006) (quoting Gandia-Maysonet, 227 F.3d at 3), pursuant to Fed. R. Crim. P. 11(b)(1)(G). Again, we see no error.

In determining whether there has been a core violation, "[w]hat is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of the communication." United States v. Cotal-Crespo, 47 F.3d 1, 4-5 (1st Cir. 1995). As discussed, the district court personally addressed García-Núñez in open court, explained the consequences of pleading guilty to him, recited the elements of the § 924(c) charge, and asked García-Núñez

- 18 -

"is that what you did?" Therefore, García-Núñez should have reasonably understood the nature of the charges against him. Moreover, García-Núñez does not point to any authority, nor are we aware of any, establishing that a court must first require a defendant to state, in his own words, the crime he committed prior to accepting a guilty plea. Federal Rule of Criminal Procedure 11(b)(1)(G) requires only that the court confirm that a defendant understands the charge or charges brought against him. It does not specify that a court must confirm a defendant's understanding by having him describe the offense in his own words. See United States v. Díaz-Concepción, 860 F.3d 32, 36-37 (1st Cir. 2017) ("Rule 11 does not require a court to employ a specific script [or] set of magic words. And it certainly does not require the court to explain the technical intricacies of the charges, including, in most cases, the charges' component elements. Under ordinary circumstances, it is sufficient in a plea colloquy for a district court to ascertain that a defendant is aware of the nature of the charge against him by reading the charge in the indictment to the defendant and obtaining his competent acknowledgment that he understands the charge") (alteration in original) (internal citations omitted) (cleaned up).

C.    Ineffective Assistance of Counsel

García-Núñez also challenges his conviction on the ground that he received ineffective assistance of counsel. He

- 19 -

makes two arguments in this regard. First, he contends that his plea was not knowing and voluntary because it was the result of "erroneous legal advice" as, at the time he entered his plea, his counsel did not have the lab results regarding the substance suspected to be, and later confirmed to be, marijuana.

Second, García-Núñez also argues for the first time on appeal that the ineffective assistance violated his Sixth Amendment right to counsel. This argument is largely tied to his counsel advising him to plead guilty before receiving the lab report regarding the substance suspected of being marijuana and allegedly without knowing the substance's weight. The government argues, in pertinent part, that García-Núñez's ineffective assistance of counsel claims cannot be pursued here on direct appeal. We agree.

As we have explained:

> [i]n the plea-withdrawal context, a defendant arguing that he received ineffective assistance must show that his attorney's performance fell below an objective level of reasonableness and that, but for this deficient performance, there is a reasonable probability he would not have pled guilty. If an appellant's claim "is confined to matters found in the record and can be determined without the need for additional fact finding," we may consider it on direct appeal. Otherwise, "fairness to the parties and judicial economy both warrant that, absent extraordinary circumstances, an appellate court will not consider an ineffective assistance claim where no endeavor was first made to determine the claim at the district level."

Fernández-Santos, 856 F.3d at 17 (internal citations and

alteration omitted).

García-Núñez did not raise an ineffective assistance claim below and this is not an instance where the record is sufficiently developed for us to adequately consider the claims. Cf. United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991). In particular, the record is silent regarding the counsel García-Núñez received prior to entering his guilty plea. We thus dismiss García-Núñez's ineffective assistance claim without prejudice to his right to pursue it later under 28 U.S.C. § 2255. See Fernández-Santos, 856 F.3d at 18.

Because we conclude that the record is not sufficiently developed to allow us to adequately consider the ineffective assistance claim, García-Núñez's Sixth Amendment claim is also denied without prejudice to him presenting it as a collateral attack under 28 U.S.C. § 2255.

### III. Conclusion

For the reasons given, we find that the district court did not err in denying García-Núñez's motion to withdraw his guilty plea.

Affirmed.