## ENRIQUE RIVERA et al. v. UNITED STATES.

No. 2564.

Circuit Court of Appeals, First Circuit.

April 7, 1932.

Francis H. Dexter, of San Juan, Porto Rico (Benicio F. Sanchez, of San Juan, Porto Rico, on the brief), for appellants.

Frank Martinez, U. S. Atty., of San Juan, Porto Rico (Frank Bianchi, Asst. U. S. Atty., of San Juan, Porto Rico, and A. Chesley York, Asst. U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge.

This is an appeal brought by Faustino Enrique Rivera and Ramon Monchin from a judgment of the District Court of the United States for the District of Porto Rico, in favor of the United States, in a criminal prosecution for violation of section 37 of the Criminal Code of the United States (18 USCA § 88).

On June 25, 1930, the grand jury for the District of Porto Rico had presented to it by

818

the acting United States attorney a form of an indictment containing three counts against the above-named defendants.

As to the first count, the grand jury returned "not a true bill." To the second and third counts it returned "a true bill."

Upon trial the petit jury returned a verdict of "not guilty" on the second count, and "guilty" on the third count.

Counts 1 and 2 are eliminated from our consideration. Count 3 is in the language following: "That on about the 18th day of April, 1930, and upon other dates to these grand jurors unknown, at Porto Rico, in the District of Porto Rico and within the jurisdiction of this Court, and in other places to these Grand Jurors unknown, Faustino Enrique Rivera (a) Fa and Ramon Arzon (a) Monchin, did unlawfully, willfully and knowingly conspire, combine, confederate and agree together, with each other, and with divers other persons to these Grand Jurors unknown, to fraudulently and knowingly facilitate the transportation of certain merchandise which had been imported in the United States contrary to law and which the said defendants then and there well knew to have been imported into the United States contrary to law in that the duty on said merchandise as required by the Tariff Act of 1922 was not paid, which said merchandise consisted of 93 sacks of Holstein Pilsener Beer and the transportation of which said merchandise was facilitated as aforesaid in Brockway truck, license plate No. H–404, motor No. 4537. That in pursuance of said conspiracy, combination, confederation and agreement, and to effect the object thereof, the aforesaid truck was loaded with the said merchandise, to wit, 93 sacks of Holstein Pilsener Beer, and the said truck was escorted by the defendants herein in a Dodge Victory Sedan automobile, license plate No. 9843, and the said defendants parked the said automobile across the road in front of the said truck and came out of the automobile with guns, and several other persons to the Grand Jurors unknown also came out of the truck, all armed with guns, and tried to prevent and prevented the search and seizure of the truck, and which said acts were done on or about April 18, 1930, at Porto Rico, in the district aforesaid and within the jurisdiction of this Court."

To this indictment the defendant filed a demurrer in the following language:

"Now come the defendants through their undersigned attorney and demur to the third count of the indictment for the same is not sufficient in law and is defective, uncertain and insufficient in the following particulars:

"That the alleged conspiracy does not show facts sufficient to bring it within any statute of the United States.

"That there is no sufficient allegation of the object of the alleged conspiracy.

"There is no sufficient showing of unlawful means, or the commission of any overt act by these defendants.

"That the attempted statement of facts seeking to show a connection of these defendants with an alleged conspiracy are statements of conclusion of law.

"That said third count of the indictment is vague, indefinite and uncertain in failing to show:

"(a) When the alleged conspiracy was entered into. (b) What the alleged conspiracy consisted of. (c) Whether the alleged conspiracy was carried out. (d) When was the alleged conspiracy carried out? (e) What acts were carried out pursuant to said conspiracy, and which acts were commenced and consummated. (f) Whether said conspiracy is still in existence or has terminated.

"Wherefore the defendants pray that said third count of the indictment be quashed or for any other remedy that the court may deem proper and just."

The demurrer was overruled by the District Judge. Following conviction, the defendants filed a motion in arrest of judgment covering the same grounds set forth in the demurrer. The motion was denied. Following this there was a motion for a new trial which was also denied. Refusal to grant a new trial is a matter within the discretion of the trial judge, and not a matter for consideration in this court. Di Carlo v. United States (C. C. A.) 6 F.(2d) 364, 369.

Eight assignments of errors are alleged as follows:

(1) That the court erred in not sustaining the demurrer to the third count of the indictment.

(2) That the court erred in admitting Mr. Erkilla to testify that he received information that Faustino Enrique Rivera and Ramon Arzon were going to escort a contraband, over the objection of the defendants, for this evidence is hearsay evidence and inadmissible.

(3) That the District Court erred in not directing the jury to find the defendants not guilty at the close of the whole case.

(4) That the District Court erred in entering the judgment against the defendants upon the verdict in this case.

(5) That the court erred in overruling and denying and in not granting the motion of said defendants in arrest of judgment. The third count of the indictment thereof fails to state an offense within section 37 of the Criminal Code of the United States.

(6) That the court erred in overruling and denying the motion of the defendants for a new trial.

(7) That the verdict of the jury is not supported by any competent evidence in the record.

(8) And for other errors appearing in the record.

The indictment is drawn under section 37 of the Criminal Code (18 USCA § 88), which provides as follows: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

The object of the conspiracy was to "fraudulently and knowingly facilitate the transportation of certain merchandise which had been imported into the United States contrary to law," which comes under the inhibition of 19 USCA § 497 (42 Stat. 982, § 593 (b), as follows: "If any person fraudulently or knowingly imports or brings into the United States, or assists in so doing, any merchandise, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding $5,000 nor less than $50, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

It is apparent from a reading of section 37 of the Criminal Code, and it has been repeatedly so held, that a conspiracy to commit a crime is a different offense than the crime that is the object of the conspiracy. Williamson v. United States, 207 U. S. 425, 447, 28 S. Ct. 163, 52 L. Ed. 278; United States v. Rabinowich, 238 U. S. 78, 85, 35 S. Ct. 682, 59 L. Ed. 1211.

An indictment is sufficient that charges a statutory crime substantially in the words of the statute. Jelke v. United States (C. C. A.) 255 F. 264. A crime which is the object of the conspiracy need not be described with the same particularity in the indictment for conspiracy as in an indictment for such crime itself. Ford v. United States (C. C. A.) 10 F. (2d) 339; Taylor v. United States (C. C. A.) 2 F. (2d) 444, 446; Rulovitch v. United States (C. C. A.) 286 F. 315; Anderson v. United States (C. C. A.) 260 F. 557.

It is not essential that it be consummated. United States v. Rabinowich, supra; Williamson v. United States, supra.

To satisfy the conditions of the conspiracy statute, one or more of the conspirators must do some act to effect the object of the conspiracy; that is, there must be an overt act alleged. Jones v. United States (C. C. A.) 162 F. 417; United States v. Linton (D. C.) 223 F. 677.

The means by which the object of the conspiracy is to be attained need not be set out in detail. Houston v. United States (C. C. A.) 217 F. 852, 857. It is sufficient if an indictment contains a general description of the means by which the object is to be attained. Perrin v. United States (C. C. A.) 169 F. 17, 21; United States v. Benson (C. C. A.) 70 F. 591, 596.

Time and place of the formation of the conspiracy is sufficiently charged in the recital of the offense or if set forth in the overt act. Rubio v. United States (C. C. A.) 22 F. (2d) 766; Fisher v. United States (C. C. A.) 2 F. (2d) 843.

The place of the conspiracy is immaterial provided an overt act is committed within the jurisdiction of the court. Hyde & Schneider v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614; Brown v. Elliott, 225 U. S. 392, 32 S. Ct. 812, 56 L. Ed. 1136.

In general, an indictment must contain sufficient allegations to inform the accused of the nature of the offense and sufficiently apprise him of the charges against him so that he may properly prepare his defense, and, if convicted, the judgment rendered will be a bar to another prosecution for the same of-

fense. Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606; Lund v. United States (C. C. A.) 19 F.(2d) 46.

In addition to the authorities already cited, Revised Statutes, § 1025 (title 18, USCA § 556) provides: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

 Tested by the foregoing statute and the principles enunciated in the various citations of authorities covering the entire field of defendant's objections, we find the indictment to be sufficient and the demurrer thereto properly overruled.

 The defendants contend that, as the jury acquitted them under count 2 of the indictment, which alleged the substantive offense of facilitating the transportation of contraband liquor, the verdict of "guilty of conspiracy" to commit a like offense is inconsistent and an absurdity; and that the jury could not convict the defendants on the third count because they had acquitted them of the substantive offense charged in the second count.

The answer to this contention is that conspiracy to commit an offense and the substantive offense are two separate and distinct criminal acts (Williamson v. United States, supra), and it is not essential that the substantive offense be consummated. The conspiracy is none the less punishable. It is also punishable though the intended crime be accomplished. Acquittal of the substantive offense is not res adjudicata in a trial for conspiracy to commit it. Coy v. United States (C. C. A.) 5 F.(2d) 309; Heike v. United States, 227 U. S. 131, 144, 33 S. Ct. 226, 57 L. Ed. 450, Ann. Cas. 1914C, 128.

 In assignment number two, the defendants allege that the court erred in permitting the inspectors to testify to the confidential information on which they acted. Evidence of this character is admissible in hearings before the court on motions to suppress evidence claimed to have been secured without a search warrant and without probable cause. It is also admissible in trials before the court of motions to return property illegally seized. The cases cited in the government's brief do not sustain the proposition that such evidence, which is clearly hearsay, is admissible before the jury upon the trial of the case.

The following are the cases cited in the government's brief: United States v. Blich (D. C.) 45 F.(2d) 627; Hawthorne v. United States (C. C. A.) 37 F.(2d) 316, 317; United States v. Gowen (C. C. A.) 40 F.(2d) 593; Ash v. United States (C. C. A.) 299 F. 277.

It is admissible for officers when testifying before the jury to testify that acting upon information they did certain things, but to go further and testify in detail as to what they had been told is putting before the jury testimony which plainly violates the hearsay rule. Hearsay testimony may or may not be prejudicial. If, in the course of the trial, the same testimony is introduced coming from witnesses having first-hand knowledge of the facts, the fact that some previous witness has testified to those facts from hearsay is merely corroborative and not necessarily so prejudicial as to require the setting aside of a verdict.

In the instant case, all of the facts stated upon hearsay were corroborated and established by competent testimony later adduced from witnesses having first-hand knowledge.

We do not think the hearsay testimony in this case was so prejudicial as to require the setting aside of the verdict.

 Assignments 3, 4, 5, 6, and 7 present questions of the sufficiency of the evidence to sustain the verdict of the jury.

The evidence tended to show that on the 18th day of April, 1930, Manuel H. Castrillo and Raimundo Santiago, inspectors in the customs patrol at San Juan, Porto Rico, were doing patrol duty in an automobile on the Caguas road. Acting upon information (confidential) which they had previously received, they stopped and searched a car in which the defendants Rivera and Arzon were riding, and found no liquor in it. While searching the car, they saw a Brockway truck, H-404, approaching. They tried to stop the truck, which, after attempting to run them down, escaped, followed by the car occupied by the defendants. The two cars went ahead, the truck in front and defendants' car behind. The inspectors, who followed them in their automobile, tried many times to pass defendants' car, but they would block the road with their car whenever an attempt was made to pass them. Upon arriving at a country road the truck entered it, and defendants with their car blocked the entrance to the same. The two defendants got out of their car with drawn revolvers, and together with six or seven other men from the truck, also armed, prevented the inspectors from capturing the truck. One of the cus-

toms patrol inspectors remained in observation, and the other went to a nearby town for reinforcements.

After obtaining assistance, the officers went back to where they had left the truck, took up the fresh track of the truck's tires, followed it about a mile along a country road where they found it loaded with sacks of liquor. They opened one of the sacks and "found that it contained Holstein Pilsener beer made in Hamburg, Germany." This was the name upon the labels of the bottles. They seized the truck and contents and took it to the police station in Rio Piedras.

Ernesto Gonzalez Comulada, a witness, called in behalf of the government, testified that he was chief inspector of customs at San Juan, Porto Rico; that he received from Mr. Castrillo, a customs inspector, April 20, 1930, 93 sacks of German beer; that according to the labels it was German beer; that sample of the beer was in the courtroom and the balance was in the customs warehouse. He testified that the liquor in the courtroom was a part of the 93 sacks.

J. W. Purman, a witness, called in behalf of the government, testified that he was chemist for the prohibition department at San Juan; that he had seen the two bottles that were in the courtroom; that they were brought to him by Mr. Castrillo on April 21, 1930; that he analyzed the contents and found it a very good class of beer running 5.6 per cent. alcohol; that he would call it a German variety of beer, the Pilsener variety. He testified that he could not tell where it was made, but that it tasted like a good variety of German beer fit for beverage purposes; that they can't make that kind of beer in Porto Rico. On cross-examination he testified that there was no brewery in Porto Rico making that kind of beer; that it takes a large brewery with certain kinds of apparatus and certain kinds of water; that in his opinion the beer is of foreign manufacture; that it is an aged beer. "I know that by the taste, analysis and flavor. Good beer has to be aged for a certain period, but the period I don't know exactly. This beer is not a green beer. That beer doesn't age in the bottle, provided it is hermetically sealed and no air gets to it." He testified that when he received these bottles they were sealed; and that he didn't know its exact age.

Julio Padilla, called on behalf of the government, testified that he was chief of the liquidating division of the custom house in San Juan and that his business was to liquidate all merchandise coming through customs in San Juan; that no German beer had come through the customs house or through any customs house in the island since he had been liquidator for twelve years; that there had been no legal importation of any kind of beer; and that he had been in the customs service since 1918. On cross-examination he testified that he had been over all of the records before coming to court to testify; that every record was in his file; that every importation to the island had to be liquidated in San Juan; and that he was positive that since 1920 there had been no legal importation of beer.

One contention of the defendants is that there is no evidence tending to show that they knew that the liquor was illegally imported into the United States without the payment of duties thereon. This point was saved by defendants' motion for a directed verdict at the close of the government's case.

On this branch of the case, the first issue for our consideration seems to be whether or not there was evidence from which the jury might find that the beer was of foreign manufacture. The first evidence found in the record is that of Manuel H. Castrillo, who testified that when they found the truck "we counted 93 sacks on the truck; sacks of German beer, Tigre brand." Raimundo Santiago testified: "We found the truck H-404 with many sacks of liquor. We opened a sack and found that it contained Holstein Pilsener beer made in Hamburg, Germany." The witness continued: "I am testifying to what was on the label."

Ernesto Gonzales Comulada testified: "According to the label it was German beer."

Carlos Manuel Montes, corporal of the insular police, testified: "I took policeman Arturo Nieves and went with Inspector Castrillo, and on the Guaynabo Road we found a truck, H-404, loaded with liquor which we seized; it was beer."

As already recited, Purman, the government chemist, testified that in his judgment it was German beer of the Pilsener variety and that they could not make that kind of beer in Porto Rico; that the bottles were sealed; and that the beer had been aged before being bottled. Sample bottles were introduced in evidence, and the jury had the opportunity of reading the labels.

Castrillo testified that the labels on the bottles in court were the same labels on the bottles when seized.

From the foregoing evidence the jury could reasonably find that the beer was of foreign manufacture.

The next question is whether or not there was any evidence from which the jury could reasonably find that the beer had been illegally imported into the United States without the payment of duties thereon. If, as the jury evidently believed, it was manufactured in Germany, it must have been imported. Julio Padilla, liquidating agent of the custom house, testified that no German beer had been legally imported into the island for the past twelve years. From this evidence, the jury could find that the beer was illegally imported without the payment of duties thereon. The evidence supports such a finding.

The next question is whether or not there was any evidence in the case from which the jury could justifiably find that the defendants knew that they were facilitating the transportation of foreign liquors imported or brought into the island contrary to law.

 The evidence is circumstantial. In order to sustain a conviction on circumstantial evidence, all the circumstances proved must be consistent with each other, consistent with the hypothesis that the accused is guilty, and at the same time inconsistent with the hypothesis that he is innocent. Such appears to be the general rule of law applicable to circumstantial evidence. Grantello v. United States (C. C. A.) 3 F.(2d) 117; Leslie v. United States (C. C. A.) 43 F.(2d) 288.

Only two hypotheses are deducible from the evidence; either the defendants were the owners or otherwise financially interested in the liquor, or they were men hired by the men "higher up" to guard the same.

That the defendants were connected with the transportation and knew it was contraband is established from the fact that, when the truck ran by the government car, the defendants followed in their touring car and barred the road. When the truck drew into a side road and stopped, the defendants still barred the road, and, with the men riding in the truck, defended it with drawn revolvers.

Conceding that, if the defendants were the owners of the liquor, the jury could reasonably find that they were not ignorant of its quality and quantity, the crucial question is whether there is sufficient evidence from which the jury could find that the defendants were the owners. I think there was; but a majority of the court are of the opinion that it does not follow that the only reasonable deduction from the fact that these respondents escorted the truck, but did not drive it, is that they were the owners of the liquor and therefore knew of its unlawful importation, or that because the transportation was from Naguabo, a place on or near the coast, proves beyond a reasonable doubt that the respondents knew that the contraband liquor was German beer and not of local origin. It is as reasonable, if not more reasonable, to conclude that the defendants were men hired to guard the truck as to conclude that they were the owners of the contraband liquor.

The chain of circumstances in the case do not require a finding, as the only reasonable hypothesis, that the defendants knew the origin of the contents of the truck or its nature, except that it was contraband, which does not constitute the offense with which they are charged.

The circumstantial evidence in the case not being sufficient to warrant a verdict of guilty on the third count, the court below should have granted the motion to direct a verdict of not guilty.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for a new trial.