# United States Court of Appeals
## For the First Circuit

No. 19-1791

UNITED STATES OF AMERICA,

Appellee,

v.

LAWRENCE ANDERSON FONSECA,
f/k/a Lawrence Anderson Fonseca-Garcia,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Lipez, Circuit Judges.

José R. Olmo-Rodríguez for appellant.
Thomas F. Klumper, Assistant United States Attorney, Senior
Appellate Counsel, with whom W. Stephen Muldrow, United States
Attorney, and Mariana E. Bauzá-Almonte, Assistant United States
Attorney, Chief, Appellate Division, were on brief, for appellee.

September 8, 2022

**LIPEZ, Circuit Judge.**  Lawrence Anderson Fonseca and four co-defendants were charged with conspiring to import cocaine into the United States, in violation of 21 U.S.C. §§ 959, 960 and 963, and money laundering to promote this conspiracy in violation of 18 U.S.C. § 1956(a)(2)(A).  Following the denial of his motion to dismiss the indictment, Fonseca pleaded guilty to the conspiracy count.  He subsequently filed several motions to withdraw his plea, each of which was denied by the district court.  On appeal, Fonseca argues that he should be allowed to withdraw his guilty plea and that the indictment against him should be dismissed.  Although our rationale on the plea withdrawal request differs somewhat from that of the district court, we affirm.

## I.

### A.   The Underlying Conviction

Fonseca is a citizen and resident of the British Virgin Islands ("BVI").  As set forth in the statement of facts incorporated into his plea agreement, Fonseca and his co-defendants conspired, from approximately May 2012 to July 2014, to import at least five kilograms of cocaine into the United States.  The statement of facts identifies several overt acts committed in the United States in furtherance of the conspiracy, although ultimately no drugs were ever imported into the country.  The government has not disputed that Fonseca lived in the BVI throughout the relevant timeframe.

- 2 -

Fonseca first moved to dismiss the indictment in October 2015. Relying on principles of extraterritorial jurisdiction, he argued that the district court lacked subject matter jurisdiction over the case because he was a citizen and resident of the BVI and, he claimed, had taken no actions with an actual or intended effect in the United States. He also argued that any overt acts undertaken in the United States by his co-conspirators were too insignificant to support subject matter jurisdiction over him. Finally, Fonseca argued that the court lacked personal jurisdiction over him because he had been unlawfully transported to Puerto Rico after being detained by United States agents in the Dominican Republic, and that the court should, at a minimum, hold an evidentiary hearing on this issue. The district court denied these claims in March 2016.

Fonseca pleaded guilty in August 2016 with the assistance of counsel. As described above, the plea agreement incorporated a statement of facts, which Fonseca "adopt[ed] . . . as his own testimony." In this statement, he acknowledged that he had conspired to import cocaine into the United States and that he or his co-conspirators had engaged in several overt acts involving money transfers to or from the United States. The transactions included Fonseca's receipt of a $5,000 wire transfer from California, sent by his co-defendant Terrence Edwards, and a $35,000 transfer of funds from co-defendant Justin Gumbs to the

United States bank account of Fonseca's wife and co-defendant, Sharon Rodriguez. The plea agreement also included a waiver of appeal provision, in which Fonseca agreed that if his sentence was consistent with (or more lenient than) the recommendation set forth in the plea agreement, he "knowingly and voluntarily waive[d] and surrender[ed] his right to appeal the judgment and sentence in this case." On the recommendation of a magistrate judge, the district court accepted his guilty plea.

## B. Fonseca's Plea Withdrawal Motions

In March 2017, several days before his scheduled sentencing date, Fonseca filed his first pro se motion to withdraw his plea, as well as a motion to "withdraw" his counsel from the case. In the plea withdrawal motion, he argued that he was innocent, claiming that his involvement in the conspiracy was "[i]nconclusive," and that his attorney had misled and pressured him into pleading guilty and had not adequately investigated the allegations.

The district court postponed the sentencing hearing pending a decision on these motions and referred the attorney withdrawal motion to a magistrate judge for disposition, who denied it after a hearing. The district court denied the plea withdrawal motion, finding that Fonseca had pleaded guilty knowingly, voluntarily, and intelligently. The court noted that Fonseca's "general, unsubstantiated" statement that he was innocent was not

entitled to any weight and that he had not explained why he had adopted the statement of facts in his plea agreement admitting to the offense conduct. The district court also found that Fonseca had not proffered any evidence that he had been confused about the accusations or had been unduly pressured into pleading guilty. Finally, the court found that the delay of more than seven months between Fonseca's guilty plea and the motion weighed against withdrawal, as did the prejudice to the government if withdrawal were permitted (i.e., the court's belief that the government would be prejudiced by the additional cost to prepare for trial).

In May 2017, Fonseca again moved pro se to withdraw his guilty plea and asserted various defenses. Several months later, before that motion was decided, he filed a third pro se motion raising similar arguments and emphasizing the court's purported lack of personal jurisdiction over him. The court denied both motions in November 2017, concluding that Fonseca had not put forth any new arguments.

In February 2018, four days before Fonseca's rescheduled sentencing date, new counsel for Fonseca appeared and filed a request to again continue sentencing, which the court granted. Following several more postponements allowed by the court, Fonseca filed a fourth motion to withdraw his guilty plea.

In support of his new request, Fonseca cited statements made by his co-defendant Edwards, who had testified at the

sentencing hearing of co-defendant Gumbs. At this sentencing hearing -- which occurred in August 2017, between Fonseca's second and third plea withdrawal requests -- Edwards made several comments that Fonseca claims are exculpatory as to him. First, Edwards testified that he had traveled to the BVI in October 2012 to help Fonseca and Gumbs obtain narcotics but found that "there was nothing" when he arrived. Edwards also stated that, at several points during the conspiracy, Edwards had told Gumbs that he believed Gumbs was lying about whether Gumbs and Fonseca would ultimately procure drugs. Fonseca argued that this testimony showed that Fonseca's communications with his co-defendants about importing drugs were actually part of a scam to steal money from them -- and, hence, that Fonseca had not taken part in any actual conspiracy to import drugs.

The new request was referred to a magistrate judge, who found that Fonseca's assertion that he is innocent and the timing of his request -- which was made after he learned of Edwards's testimony -- weighed in favor of withdrawal. However, the magistrate judge found that Fonseca's plea had been knowing and voluntary and that Edwards's testimony was not new, nor was it exculpatory -- findings that weighed against withdrawal.[1] The

---

[1] Nevertheless, as we will discuss in more detail, the magistrate judge -- and later the district court -- appears to have erroneously believed that the mere invocation of an innocence

- 6 -

magistrate judge then considered the question of prejudice to the government and concluded that the government would not be significantly prejudiced by withdrawal. Weighing these factors together, the magistrate judge recommended that the district court grant Fonseca's motion.

The district court took a different view. Although it agreed with the magistrate judge's assessment of several of the factors militating for and against withdrawal, it disagreed that the timing of the request favored withdrawal. The district court also found that Fonseca had not adequately explained either the nearly one-year gap between Edwards's testimony and Fonseca's fourth withdrawal motion, or the initial seven-month delay between the plea itself and his first withdrawal motion in March 2017. Further, the district court found that the government would be prejudiced by withdrawal. It therefore denied Fonseca's request to withdraw his plea.

Fonseca filed two motions for reconsideration, both of which were denied. In June 2019, he was sentenced to 120 months' imprisonment, which was consistent with the recommendation set forth by the government in his plea agreement. This appeal followed.

---

claim was sufficient to tilt this factor in Fonseca's favor, regardless of the strength of the claim.

Fonseca raises three arguments on appeal. He claims that the district court (1) abused its discretion by denying his request to withdraw his guilty plea,[2] (2) erred in denying his motion to dismiss for lack of subject matter jurisdiction, and (3) erred in denying his motion to dismiss for lack of personal jurisdiction.

## A. Plea Withdrawal

Before turning to the merits of Fonseca's plea withdrawal claim, we briefly address the waiver-of-appeal provision in his plea agreement, which prohibits an appeal from the "judgment and sentence" in his case. Unlike most other circuits, we have never squarely addressed whether an appeal from the denial of a motion to withdraw a plea constitutes a challenge to a defendant's "judgment" or "conviction" as a matter of law.[3]

---

[2] While Fonseca has moved to withdraw his plea several times, the arguments he raises on appeal pertain to his fourth plea withdrawal request, and he does not renew any arguments that were specific to any of his earlier requests. Accordingly, our analysis is limited to his fourth motion. See Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 32 (1st Cir. 2016) (stating that we do not consider arguments for reversing a district court's decision that were not raised in a party's opening brief).

[3] We have previously suggested that there is a "strong argument" that an appeal from the denial of a motion to withdraw a plea is encompassed by the language of an appellate waiver barring challenges to the conviction and sentence. See United States v. Caramadre, 807 F.3d 359, 377 n.9 (1st Cir. 2015). Indeed, all other circuits to have addressed the issue have found that a plea withdrawal motion constitutes a challenge to the defendant's conviction. See, e.g., United States v. Alcala, 678

If it does, then Fonseca's motion would fall within the scope of the appeal waiver, and we would ordinarily enforce this provision so long as it was entered into knowingly and voluntarily, and so long as doing so would not work a "miscarriage of justice." See United States v. Teeter, 257 F.3d 14, 23-26 (1st Cir. 2001).[4]

However, the government has conceded that we should proceed directly to the merits of Fonseca's appeal on the motion to withdraw issue -- i.e., the question of whether the district court abused its discretion in denying Fonseca's motion to withdraw his guilty plea. In making this concession, the government relies on a series of cases in which we have held that "a court may opt to go directly to the merits of an appeal where a defendant who has entered a guilty plea and agreed to waive his right to appeal seeks to challenge an aspect of the plea which, 'if successful, would invalidate both the plea itself and the waiver of his right to appeal.'" United States v. Sevilla-Oyola, 770 F.3d 1, 10 n.17

---

F.3d 574, 578 (7th Cir. 2012) (holding that "a defendant challenges his conviction when he challenges the district court's denial of his motion to withdraw a plea"); United States v. Toth, 668 F.3d 374, 378-79 (6th Cir. 2012) (same, and collecting cases from other circuits).

[4] The "miscarriage of justice" exception to enforcement of an otherwise valid appellate waiver "requires a strong showing of innocence, unfairness, or the like." Sotirion v. United States, 617 F.3d 27, 36 (1st Cir. 2010) (quoting United States v. Gil-Quezada, 445 F.3d 33, 37 (1st Cir. 2006)). We express no view on whether Fonseca could meet this requirement, as he has not raised this issue.

(1st Cir. 2014) (quoting United States v. Chambers, 710 F.3d 23, 27 (1st Cir. 2013)).

The government is correct that we have previously held that a motion to withdraw a guilty plea is a challenge to the plea's validity when the defendant argues that the plea was not entered into knowingly and voluntarily. See Chambers, 710 F.3d at 27. Likewise, we have held that a motion to withdraw a guilty plea on the ground that the district court failed to ascertain a sufficient factual basis for the plea is also a challenge to the plea's "validity." See United States v. Torres-Vázquez, 731 F.3d 41, 44 (1st Cir. 2013). However, our case law has yet to directly address the specific scenario raised here: whether a claim of newly discovered exculpatory evidence underlying a claim of innocence, asserted as part of the grounds for permitting the withdrawal of a guilty plea, is a challenge to the plea's validity.

We need not decide whether Fonseca's innocence claim falls squarely within this line of cases, however, because -- even assuming we were to resolve this question favorably to Fonseca and conclude that the waiver of appeal provision in the plea agreement does not bar an appeal from the denial of his motion to withdraw the plea -- his argument that the district court abused its discretion fails on the merits. We therefore accept the government's concession and assume, as do the parties, that

Fonseca's claim is reviewable for the purposes of resolving this appeal.

## 1. Legal Standard

We review the district court's denial of a request to withdraw a guilty plea for abuse of discretion. United States v. Mendoza, 963 F.3d 158, 161 (1st Cir. 2020). The ultimate question is whether the defendant has demonstrated that a "fair and just reason" for withdrawal exists. See United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994) (quoting Fed. R. Crim. P. 32(d)). To assess whether that burden has been met, courts consider the totality of the circumstances, including: "(1) whether the plea was knowing and voluntary and in compliance with [Federal] Rule [of Criminal Procedure] 11, (2) the strength of the reason for withdrawal, (3) the timing of the motion to withdraw, (4) whether the defendant has a serious claim of actual innocence, (5) whether the parties had reached (or breached) a plea agreement, and (6) whether the government would suffer prejudice if withdrawal is allowed." United States v. Gardner, 5 F.4th 110, 118 (1st Cir. 2021).[5] The most important consideration is whether the plea was

---

[5] At times we have suggested that district courts are required to defer consideration of prejudice to the government until after the defendant has made a preliminary showing of a fair and just reason for withdrawal. See United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014). At other times we have treated the presence or absence of prejudice to the government holistically, as a relevant factor to be weighed against the others in determining whether a fair and just reason for withdrawal exists. See United States v.

knowing and voluntary.  See United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009).

### 2. The Strength of the Reason for Withdrawal and a Serious Claim of Actual Innocence

Fonseca primarily argues that he should be allowed to withdraw his guilty plea because the testimony of co-defendant Edwards provided exculpatory evidence that was unavailable to him when he pleaded guilty.  As previously described, Edwards testified at co-defendant Gumbs's sentencing hearing that, in October 2012 when Edwards first traveled to the BVI to help Fonseca procure drugs, "there was nothing" -- i.e., Fonseca and Gumbs had not identified or secured any drugs.  He also testified that he could never be sure when Gumbs was lying about his plans to import drugs with Fonseca.   Fonseca argues that this testimony supports his claim that his interactions with Edwards and others were part of a scam, that he never intended to import drugs, and that he pleaded guilty to help secure a more favorable plea deal for his wife (co-defendant Rodriguez).[6]  He maintains that he would not have pleaded

_____

Dunfee, 821 F.3d 120, 127 (1st Cir. 2016) (per curiam); compare Gardner, 5 F.4th at 118-19 & n.9 (considering these factors holistically), with id. at 122 (Lynch, J., dissenting) (arguing that a court may consider prejudice only if the totality of the other factors weighs in favor of withdrawal).  This case does not require us to resolve this apparent uncertainty in our case law, as the totality of the circumstances weigh against Fonseca's request regardless of which approach is taken.

[6] Fonseca also made general assertions of innocence in his first three plea withdrawal motions, but these motions did not

- 12 -

guilty if Edwards's testimony had been available to him at the time.

A court must assess the force and plausibility of the reasons proffered for withdrawal. See United States v. Isom, 85 F.3d 831, 837 (1st Cir. 1996). Here, because the primary reason for withdrawal Fonseca proffered -- Edwards's testimony -- is inextricably bound up with his claim of innocence, we consider the "strength of the reason" and the "serious claim of actual innocence" factors together.

The district court found that Fonseca's explanation for the withdrawal request was implausible. It noted that the substance of Edwards's testimony was not new. In so concluding, it relied on summaries of recorded phone calls between Edwards and Gumbs that were provided to Fonseca in discovery prior to his plea.[7] These summaries included conversations between Edwards and Gumbs in the spring of 2014 discussing Fonseca's past failure to secure drugs. During these conversations, Edwards told Gumbs that, among other things, Fonseca was "full of shit" and did not have any drugs. Elsewhere in the call summaries, Edwards expresses to Gumbs that he does not trust Fonseca and is tired of dealing with

---

develop the argument that he raised in his fourth motion, and on appeal, regarding the efforts to "scam" his co-defendants.

[7] Fonseca's plea agreement confirmed that "[f]ull discovery ha[d] been provided to the defendant."

him.  The district court further concluded that, "while portions of Edwards's testimony may support [Fonseca's] claim of innocence, they are certainly not exculpatory."  Finally, the district court noted Fonseca's shifting explanations for his guilty plea.  In his first two motions to withdraw his plea, Fonseca had argued that he had been pressured to plead guilty by his counsel.  In his fourth plea withdrawal request, however, Fonseca conceded that his plea had been knowing and voluntary, and instead asserted for the first time -- and with no record support -- that he had pleaded guilty to secure a better deal for Rodriguez.

We see no error in the district court's consideration of Fonseca's proffered reasons for withdrawal.  The statements Fonseca received in discovery were substantially similar to Edwards's testimony, and Fonseca therefore could have made the same arguments about his lack of intent before he pleaded guilty. See United States v. Adams, 971 F.3d 22, 38-39 (1st Cir. 2020) (affirming denial of a plea withdrawal motion based on evidence to which the defendant had access before his plea).  Nor did the district court err in finding that Fonseca's evolving rationales for seeking to withdraw his guilty plea raised concerns about the veracity of his newly proffered reasons.  Cf. Parrilla-Tirado, 22 F.3d at 371 ("[P]lausibility [of the asserted reasons for withdrawal] must rest on more than the defendant's second thoughts

about some fact or point of law, or about the wisdom of his earlier decision [to plead guilty]." (internal citations omitted)).

The district court's conclusion that Edwards's testimony was not "exculpatory" is also supportable.  Edwards's testimony, if credited, would establish that Edwards harbored some mistrust of Fonseca, but this fact is not inherently exculpatory.  Moreover, other portions of Edwards's testimony could undermine Fonseca's claim of innocence.  For example, Edwards also attested to the authenticity of a photograph of what is alleged to be a brick of cocaine in Fonseca's car.[8]

As to the "serious claim of actual innocence" factor, the district court did not explicitly analyze whether Fonseca had raised such a claim.  Instead, it determined that Fonseca's repeated assertions of his innocence since pleading guilty weighed in favor of withdrawal, without considering whether these assertions were "serious."  We have made clear that "weak and implausible assertions of innocence" do not weigh in favor of withdrawal.  See United States v. Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996); see also United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013) ("Merely voicing a claim of innocence has no weight in the plea-withdrawal calculus; to be given weight, the claim must be credible.").  The district court therefore erred in

---

[8] Fonseca disputed that this was cocaine before the district court.

- 15 -

crediting Fonseca for merely asserting his innocence.  See United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987) (noting that the "court did not abuse its discretion in refusing to give weight to a self-serving, unsupported claim of innocence raised judicially for the first time after the Rule 11 hearing").  However, we take the district court's supportable conclusion that Edwards's testimony was not exculpatory as tantamount to a finding that Fonseca's claim of innocence -- which is primarily supported by Edwards's testimony -- is not "serious."  We therefore conclude that the district court supportably found that Fonseca had not proffered a "serious claim of actual innocence" notwithstanding the fact that it also erroneously credited him for the mere assertion of his innocence.  See Sanchez-Barreto, 93 F.3d at 24 (suggesting that district courts are better positioned to determine whether invocations of innocence are credible and affirming a district court's assessment that the defendants' claims were too weak to favor withdrawal).[9]

### 3.    The Remaining "Fair and Just Reason" Factors

We briefly address the remaining factors assessed by the district court: the timing of Fonseca's motion, whether his plea

---

[9] We note that we are particularly reluctant to disturb the district court's conclusion where, as here, the claim of innocence contradicts statements made or adopted by Fonseca in the plea agreement and at the change of plea hearing.  See United States v. Santiago Miranda, 654 F.3d 130, 139 (1st Cir. 2011).

was entered knowingly and voluntarily, and any prejudice to the government.

### i.   The Timing of the Motion

Courts consider the length of time between the entry of a guilty plea and a motion for withdrawal.  An "excessive delay saps strength from any proffered reason for withdrawal."  United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992).

The district court found that this factor also weighed against withdrawal, noting that, by the time Fonseca filed his fourth withdrawal motion in August 2018, roughly six months had passed since his new attorney's notice of appearance and over one year had passed since Gumbs's sentencing hearing, at which Edwards had testified.  The district court reasoned that Fonseca had not justified either of these delays, nor had he justified the seven-month delay between the entry of the plea itself and his first plea withdrawal request.[10]

The district court reasonably weighed these delays against withdrawal.  Even assuming, arguendo, that Fonseca only needed to justify the roughly year-long gap between Edwards's testimony and his fourth withdrawal request (as opposed to the

---

[10] In this respect, the district court's reasoning differed from that of the magistrate judge.  The magistrate judge recommended that the timing factor be weighed in Fonseca's favor because his motion came after he learned of Edwards's testimony. We find the district court's reasoning more persuasive.

longer delay from the entry of the plea itself), Fonseca has failed to proffer any reason for this lengthy delay.  Nor has he justified the months-long delay between his new attorney's February 2018 notice of appearance and the motion.  See, e.g., United States v. Dunfee, 821 F.3d 120, 131 (1st Cir. 2016) (per curiam) (holding that an approximately two-month delay between entry of the guilty plea and defendant's motion to withdraw weighed against withdrawal); United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004) (same).

### ii.  Knowing and Voluntary

Fonseca concedes that his plea was knowing and voluntary.  Given that the knowing and voluntary nature of a plea is the "most important" issue to consider in the withdrawal analysis, the district court properly reasoned that Fonseca's undisputedly knowing and voluntary plea weighed heavily against withdrawal.  See Isom, 580 F.3d at 52.

### iii. Prejudice to the Government

The district court also addressed the issue of prejudice.  It found that the government would be prejudiced by the burden of trial preparation and the unavailability of one of its witnesses, Peter Lev, who had since been deported.  Fonseca objects to the district court's reliance on Lev's absence because the government did not raise this argument before the magistrate judge and introduced it for the first time in its objections to

the report and recommendation. Fonseca is correct that the government has waived this argument. See United States v. Rosado-Cancel, 917 F.3d 66, 69 (1st Cir. 2019) (deeming an argument waived when it was not properly raised before a magistrate judge). Moreover, in the absence of an argument regarding Lev, the government's general invocation of prejudice from its trial preparation obligations falls short of tilting this factor in its favor. See Gardner, 5 F.4th at 118-19 (noting that this factor did not weigh in the government's favor when the government could show no prejudice "beyond the burdens that inevitably accompany any withdrawal [such as] . . . proceeding to trial").

*     *     *

In sum, the district court's analysis of the plea withdrawal motion was flawed in two respects. First, the district court erred in concluding that Fonseca's mere assertion of innocence weighed in favor of withdrawal, despite the substantive weakness of his claim. Second, it erred in its prejudice analysis by assigning weight to a waived argument and to garden-variety trial preparation by the government. However, the district court properly found that Fonseca's reasons for seeking withdrawal lacked plausibility, that his claim of innocence was not strong,

- 19 -

that his motion was belated, and that his plea was voluntary -- all factors that properly weigh against withdrawal.[11]

Ultimately, the district court's errors were immaterial to the result it reached. Its error in assigning weight to Fonseca's repeated assertions of innocence was favorable to Fonseca. If the court had properly declined to credit Fonseca's substantively weak assertion of innocence, the fair and just reason for withdrawal calculus would have weighed even more heavily against him. And while the court applied undue weight to the government's general invocation of prejudice, this error in finding prejudice to the government was also immaterial under the circumstances. The mere absence of prejudice to the government, without more, does not suffice to establish a "fair and just reason" for withdrawal. See Nunez Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976) (rejecting the premise that "absent a showing of prejudice by the government, withdrawals of pleas before sentence should be granted as a matter of course").

In criminal matters subject to the trial court's discretion, we typically find an abuse of discretion only when the court commits a "material error of law" or some sort of "meaningful error in judgment." United States v. Jordan, 813 F.3d 442, 445

---

[11] We also note that the parties reached a plea agreement, which was not breached. Although the district court did not analyze this factor, we have held that this fact, too, weighs against withdrawal. See Isom, 85 F.3d at 839.

- 20 -

(1st Cir. 2016) (quoting Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 83 (1st Cir. 1998)) (applying this standard with regard to the exclusion of expert testimony); see also United States v. Walker, 665 F.3d 212, 222-23 (1st Cir. 2011) (adopting a similar standard regarding motions for change of venue).  Here, although the district court erred in weighing two of the relevant factors, these errors, for the reasons we have explained, were not material errors of law or judgment that undermined the court's proper exercise of discretion in denying the motion to withdraw the guilty plea.  Hence, we find no abuse of discretion, and a remand would serve no purpose.  Cf. United States v. Gendraw, 337 F.3d 70, 72-73 (1st Cir. 2003) (noting that we are not required to remand when the record contains no basis to support a different decision).

## B.    Subject Matter Jurisdiction

The parties agree that the appeal waiver provision in Fonseca's plea agreement does not bar his challenge to the district court's subject matter jurisdiction, an issue that may be raised at any time.  See United States v. González, 311 F.3d 440, 442 (1st Cir. 2002).  We review the court's jurisdictional ruling de novo.  See United States v. Vargas-De Jesús, 618 F.3d 59, 63 (1st Cir. 2010).

Fonseca claims that the district court lacked subject matter jurisdiction over the conspiracy charge because he never

entered the United States during the conspiracy and did not intend for his actions to have an impact in the United States. This argument has no merit. Federal district courts have jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. "Thus, if an indictment or information alleges the violation of a crime set out 'in Title 18 or in one of the other statutes defining federal crimes,' that is the end of the jurisdictional inquiry" on a motion to dismiss. See United States v. George, 676 F.3d 249, 259 (1st Cir. 2012) (quoting González, 311 F.3d at 442); see also United States v. Frias, 521 F.3d 229, 235-36 (2d Cir. 2008) (stating that an indictment that "plainly track[ed] the language of the statute and state[d] the time and place of the alleged [crime]" was sufficient to invoke the district court's jurisdiction).

Fonseca does not contest that the indictment tracked the language of 21 U.S.C. §§ 959, 960, and 963, the statutes he was charged with violating. Nor does he raise any other challenge to the indictment itself. He instead disputes whether the government would ultimately be able to prove that he personally acted with the intent to cause any effects in the United States. This argument goes to the sufficiency of the evidence, not to whether the indictment -- which was facially valid -- should be dismissed. See United States v. Stewart, 744 F.3d 17, 22 (1st Cir. 2014) ("[A]t the motion-to-dismiss stage, the allegations are taken as

true, leaving for the jury the questions of the actual scope of the conspiratorial agreement . . . .").

Moreover, Fonseca concedes that a federal court has jurisdiction over a conspiracy, and every member of that conspiracy, if at least one overt act alleged to be in furtherance of the conspiracy was committed in the United States. See United States v. Inco Bank & Tr. Corp., 845 F.2d 919, 920-21 (11th Cir. 1988) (per curiam); see also Rivera v. United States, 57 F.2d 816, 819 (1st Cir. 1932) ("The place of the conspiracy is immaterial provided an overt act is committed within the jurisdiction of the court."). And he does not dispute that at least some of his co-defendants committed overt acts in the United States that were alleged to be part of the conspiracy. Indeed, he stipulated in his plea agreement that his co-defendants transferred at least $40,000 either to or from the United States, with the intent to further a drug trafficking conspiracy.

Fonseca attempts to avoid this precedent by arguing that the acts of his co-conspirators were so insignificant and inconsequential that the exercise of jurisdiction over him would be unreasonable as a matter of law. In so arguing, Fonseca appears to invoke the territorial effects doctrine, which holds that "a sovereign only possesses jurisdiction to prosecute a crime where . . . the effect within the territory is substantial." United

States v. Woodward, 149 F.3d 46, 66 (1st Cir. 1998) (internal quotation marks omitted).

However, Fonseca provides no support for the proposition that the $40,000 in transferred funds referenced in his plea agreement -- the existence of which he has not disputed -- is somehow insignificant as a matter of law. Indeed, Fonseca cites no case in which any monetary amount was considered so insignificant as to render unreasonable the exercise of jurisdiction over a drug trafficking offense. And while he argues that the amount of money transferred by his co-conspirators was insufficient to purchase a distribution-level quantity of cocaine, this argument could only conceivably relate to the scope of the conspiracy and whether these overt acts furthered the conspiracy's objectives. But, as we have discussed, these questions are inappropriate for resolution at the motion to dismiss stage. See Stewart, 744 F.3d at 22.

The district court properly denied Fonseca's motion to dismiss for lack of subject matter jurisdiction.

C. **Personal Jurisdiction**

Fonseca also argues that the district court should have divested itself of personal jurisdiction over him or, in the alternative, granted him a hearing to assess whether it should do so. This claim is based on his allegation that he was unlawfully transported to the United States to secure his appearance in this

- 24 -

case.  See United States v. Toscanino, 500 F.2d 267, 275 (2d Cir. 1974) (holding that, in extreme circumstances, a district court should divest itself of jurisdiction over a criminal case if the defendant's presence was secured by the government's "deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights").[12]

Fonseca's claim fails, however, because it is barred by the appeal waiver provision in his plea agreement.  Indeed, Fonseca develops no serious argument otherwise.  While he claims in his brief that the plea agreement "contains a waiver of appeal from the sentence, but not from the denial of the motions to dismiss for lack of in personam jurisdiction," this argument flies in the face of the agreement's plain text, which bars appeal of both his "judgment and sentence."  Fonseca's argument that the district court should have declined to exercise personal jurisdiction over him is necessarily a challenge to its "judgment" of guilt in this case.  See United States v. Baramdyka, 95 F.3d 840, 843-44 (9th Cir. 1996) (holding that a valid waiver of the right to appeal the

---

[12] We note that the Second Circuit has since held that one of the holdings of Toscanino -- that noncitizens "may invoke the Fourth Amendment against searches conducted abroad by the U.S. government" -- was abrogated by the Supreme Court in United States v. Verdugo-Urquidez, 494 U.S. 259 (1990).  See In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 157, 167 n.5 (2d Cir. 2008).  Because we conclude that the waiver of appeal provision in the plea agreement bars this claim, we need not delve further into the merits of Fonseca's reliance on Toscanino.

defendant's conviction and sentence applied to his challenge to the district court's purported lack of personal jurisdiction over him). Fonseca's challenge to the district court's exercise of personal jurisdiction therefore falls within the scope of the appeal waiver provision.

Affirmed.